IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| FEI GUAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:17-cv-332 |
| | ) | |
| BING RAN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANT QI TECH, LLC'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Defendant Qi Tech, LLC ("Qi Tech"), by counsel, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rules"), states as follows in support of its Motion to Dismiss the Complaint filed by Plaintiff Fei Guan ("Plaintiff"):

### PRELIMINARY STATEMENT

Plaintiff in this action is a Chinese national who relocated to the United States in 2008 to work for his sister's and former brother-in-law's engineering and consulting firm.  Now, almost ten years later, he seeks to hold those two and their company liable for alleged violations of the federal human trafficking statute and Virginia common law.  Plaintiff also attempts to assert serious human trafficking claims against Qi Tech based on extremely slim allegations and unwarranted inferences.  There is no allegation that Qi Tech was involved in any "venture" implicating the federal statute in question, or that Qi Tech engaged in any conduct offensive to Virginia law.  Instead, Plaintiff improperly seeks to impose liability on Qi Tech based on Qi Tech's alleged association with the other defendants named in the Complaint.  As set forth

below, this is not enough to state a valid claim against Qi Tech and the Court should dismiss Qi Tech from the lawsuit.

## STATEMENT OF FACTS

The Complaint attempts to state claims for violation of the Trafficking Victims Protection Reauthorization Act of 2003 ("TVPA" or the "Act"), 18 U.S.C. § 1581 *et seq.*, and Virginia common law.  *See* Complaint, dated March 24, 2017 (ECF No. 1) ("Compl."). Plaintiff is a lawful permanent resident of the United States and resides in the Commonwealth of Virginia.  Compl. ¶ 1.  Born in China, he came to the United States in 2008 under a temporary H-1B work visa sponsored by Defendant Advanced Systems Technology and Management, Inc. ("AdSTM").  Compl. ¶ 1, 27.

An engineering and consulting firm headquartered in Northern Virginia, AdSTM was founded in 1996 by Defendant Alice Guan ("Ms. Guan"), who is Plaintiff's sister.  Compl. ¶ 3, 5.  From April 3, 1985 until October 29, 2006, Ms. Guan was married to Defendant Bing Ran ("Mr. Ran").  Compl. ¶ 3.  In 2000, four years after Ms. Guan founded AdSTM, Mr. Ran began assisting Ms. Guan in running the company.  Compl. ¶ 4.  Though now separated, Ms. Guan and Mr. Ran still jointly manage AdSTM.  Compl. ¶ 5.

In early 2008, while Plaintiff was living in Japan, Ms. Guan offered Plaintiff a job with AdSTM as an analyst.  Compl. ¶ 19.  Ms. Guan formalized this offer in a letter dated February 28, 2008.  Compl. ¶ 20.  The Complaint alleges that Ms. Guan verbally represented that Plaintiff's annual salary would be between $70,000 and $80,000.  Compl. ¶ 21.  Plaintiff accepted the job offer with AdSTM, which agreed to sponsor Plaintiff's H1-B temporary work visa.  Compl. ¶ 23, 24.  Ms. Guan submitted Plaintiff's visa paperwork in April 2008 and Plaintiff moved to the United States with his family in September 2008.  Compl. ¶ 25, 27.  After

Ms. Guan arranged for Plaintiff and his family to lease a home that she owned for a monthly rent of $1,300, Plaintiff started working for AdSTM in October 2008.[1]  Compl. ¶ 29, 66.

Plaintiff's claims center on a Parenting, Support, and Property Settlement Agreement ("PSA") negotiated between Mr. Ran and Ms. Guan during their separation.  Compl. ¶ 32, 37. Qi Tech, of course, was not a party to the PSA and is not mentioned in it.  According to Plaintiff, although the PSA contained a provision that set his employment term with AdSTM at five years with an annual salary of $75,000, the PSA allegedly required that Plaintiff pay Mr. Ran one-half of his net income received from AdSTM over the course of this five-year term.  Compl. ¶ 37. Under the terms of the PSA, if Plaintiff failed to make such payments on a monthly basis, Mr. Ran and AdSTM would have no obligation to "pay and hire" Plaintiff.  *Id*.  Subsequently, Plaintiff alleges that this provision of the PSA was amended to reflect an adjustment to his term of employment from five years to approximately three years.  Compl. ¶ 42-44.  The requirement that Plaintiff pay back half of his net income to Mr. Ran remained unchanged.  Compl. ¶ 44. Plaintiff's theory of liability is based on the requirement that he pay one-half of his AdSTM salary to Mr. Ran, an arrangement that he allegedly knew nothing about before accepting the position, Compl. ¶ 39, 42, but accepted based in part on an alleged fear concerning his and his family's immigration status.  Compl. ¶ 60-65.

Beginning in October 2008, Plaintiff sent a check for half of his net income from AdSTM to Mr. Ran.  Compl. ¶ 69.  According to Plaintiff, he continued sending such a check to Mr. Ran every month until August 2014.  Compl. ¶ 89.  In early September 2014, Mr. Ran told Plaintiff that Plaintiff was permitted to stop sending Mr. Ran these monthly checks.  Compl. ¶ 93.  Then,

---

[1] In September 2009, Ms. Guan started charging Plaintiff for utilities in addition to the monthly rent payment.  Plaintiff and his family resided at the home owned by Ms. Guan under this arrangement until June 2012.  Compl. ¶ 30, 31.

in November 2014, Mr. Ran asked Plaintiff to execute a legal agreement indicating that the payments Plaintiff had made from October 2008 through August 2014 were personal loans. Compl. ¶ 94. Importantly, Mr. Ran had never previously described Plaintiff's required payments as loans and, similarly, the agreement Mr. Ran wanted Plaintiff to sign did not describe the payments as loans. Compl. ¶ 95, 98. Ultimately, Plaintiff never signed the agreement proffered by Mr. Ran. Compl. ¶ 100. From October 2008 through August 2014, the Complaint avers that Plaintiff paid Mr. Ran a total of $160,000 of the net income Plaintiff earned while employed at AdSTM. Compl. ¶ 90. Similarly, Plaintiff alleges that between September 2008 and June 2012, he paid Ms. Guan nearly $60,000 in rent (not including utilities) out of his net income earned from AdSTM. Compl. ¶ 91.

While employed with AdSTM, Plaintiff alleges he performed work for another company, Qi Tech. Compl. ¶ 104. Though a separate business entity, Qi Tech had entered into numerous Mentor/Protégé Agreements with AdSTM for the provision of management and support services. Compl. ¶ 119. Plaintiff contends that, at Mr. Ran's direction, he was required to perform work for Qi Tech from October 2010 until August 2014. Compl. ¶ 122. Plaintiff acknowledges that he was paid a bonus from Qi Tech in 2011, in addition to numerous other bonus payments from AdSTM through the end of 2014. Compl. ¶ 103, 115. He further admits that he was reimbursed for certain expenses incurred on behalf of Qi Tech. Compl. ¶ 123. The Complaint does not allege that Plaintiff was required to repay any of the foregoing bonuses to Mr. Ran or AdSTM. These offhand references to Qi Tech are the extent of the factual allegations asserted against the company in the Complaint.

On March 24, 2017, Plaintiff filed his Complaint, alleging five counts variously against AdSTM, Mr. Ran, Ms. Guan, and Qi Tech. Qi Tech is named only in Counts II and V. Count II

4

alleges that, in addition to the other defendants, Qi Tech "knowingly benefitted financially from participation in a venture" in violation of the peonage provisions of the TVPA, thus violating 18 U.S.C. § 1593A. Compl. ¶ 147. Count V alleges that Qi Tech was unjustly enriched by the services Plaintiff performed for the company. Compl. ¶ 190. For the reasons that follow, Plaintiff's Complaint fails to state a claim against Qi Tech upon which relief may be granted. Accordingly, the Court should dismiss the Complaint as to Qi Tech pursuant to Rule 12(b)(6).

## ARGUMENT

### I. Standard of Review.

A motion under Rule 12(b)(6) tests the sufficiency of a claim as set forth on the face of the complaint. *See, e.g., Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). On a motion to dismiss, a court must accept the plaintiff's factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court "need not accept the [plaintiff's] legal conclusions drawn from the facts," nor need it "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000); *see also Herman v. Lackey*, 309 Fed. App'x. 778, 781 (4th Cir. 2009).

While a claim need not be detailed, it must contain sufficient factual allegations to make it plausible with "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 *(2007); see also Ashcroft v. Iqbal,* 556 U.S. 662 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter which, if accepted as true, plainly sets forth "a claim to relief that is

5

plausible on its face." *Iqbal*, 556 U.S. at 678.  The Court must identify and reject legal conclusions unsupported by factual allegations because they are not entitled to any presumption of truth.  *Id.*  "[B]are assertions" that amount to nothing more than a "formulaic recitation of the elements" must be rejected.  *Id.* (internal citations omitted).  Second, assuming the veracity of "well-pleaded factual allegations," a court must conduct a "context-specific" analysis drawing on "its judicial experience and common sense" and determine whether the factual allegations "plausibly suggest an entitlement to relief."  *Id.* at 679.

The plausibility standard requires more than a showing of a "sheer possibility that a defendant has acted unlawfully."  *Id.* at 678.  A claim is plausible only where it includes "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  In addition to the complaint, a court also may examine "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007).

Further, with respect to Count II, Plaintiff's complicated theory of the case must not only pass the test of *Twombly* and *Iqbal*, but is also held to a higher standard because § 1593A is found in the United States Criminal Code.  Plaintiff has filed serious charges of human trafficking against Qi Tech under this provision.  As a criminal statute, § 1593A must be strictly construed in favor of the defendant.  *Crandon v. United States,* 494 U.S. 152, 158 (1990) (applying the rule of lenity where governing standard in a civil case was embedded in a criminal statute); *Federal Communications Comm. v. American Broadcasting Corp.,* 347 U.S. 284, 296 (1954) (criminal statutes must be strictly construed even when they are applied in civil cases).  As the Fourth Circuit stated with respect to the forced labor provisions of the TVPA, the Act is

"intended to address ***serious*** trafficking." *Muchira,* 850 F.3d at 618 (emphasis in original). Considering this standard, the Complaint fails to state a claim against Qi Tech.

**II.     Count II Fails to State a Claim Against Qi Tech upon which Relief may be Granted.**

  A.  *The Complaint fails to allege that Qi Tech was involved in any predicate unlawful conduct*.

Count II of the Complaint purports to state a claim against Qi Tech for violation of 18 U.S.C. § 1593A.  The text of § 1593A makes clear that liability under that provision is conditioned on the existence of a predicate offense involving other anti-peonage statutes:

> Whoever knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged ***in any act in violation of section 1581(a), 1592, or 1595(a)***, knowing or in reckless disregard of the fact that the venture has engaged in such violation, shall be fined under this title or imprisoned in the same manner as a completed violation of such section.

18 U.S.C. § 1593A (emphasis added).  Thus, to satisfy the test of § 1593A, a plaintiff must first show a violation of § 1581(a), § 1592, or § 1595(a).

Plaintiff fails to allege any such violation by Qi Tech in the Complaint.  Critically, Count I attempts to state a claim for violation of § 1581(a), but Qi Tech is ***not*** named as a defendant in that Count.  The Complaint contains no allegations that Qi Tech—or any other defendant— violated § 1592.  There is no allegation that Qi Tech engaged in any "participation" in any "venture," as required under the statute.  And, although Plaintiff invokes § 1595(a) throughout the Complaint, he does so only because it is the enabling statute under which the Complaint was filed—not because he alleges an independent cause of action for a violation of § 1595(a). Because Plaintiff's Complaint fails to allege any of the predicate statutory violations required by § 1593A, Count II fails to state a claim against Qi Tech upon which relief may be granted.

7

B. *The allegations in the Complaint do not state a claim that Qi Tech knowingly benefitted financially from peonage.*

Count II fails as to Qi Tech for another reason: Plaintiff does not allege that Qi Tech knowingly benefitted financially from any purported peonage. Section 1593A limits liability to those who "knowingly [benefit]" from participation in a venture implicating § 1581(a), § 1592, or § 1595(a). 18 U.S.C. § 1593A. The allegations against Qi Tech in Count II are limited to the recitation that Mr. Ran was an officer of Qi Tech and, in this capacity, "used [Plaintiff's] visa and the dependent visas of his family to force [Plaintiff] into continued payments" made to Mr. Ran personally. Compl. ¶ 154.

This is insufficient to state a claim against Qi Tech under § 1593A. The asserted financial benefit detailed in Count II does not implicate Qi Tech. Rather, the "continued payments" referenced in paragraph 154 of the Complaint were made to Mr. Ran and are wholly unrelated to Qi Tech. Moreover, to the extent that Count II alleges any other financial benefit bestowed upon any defendant, such allegations fail to mention Qi Tech. *See* Compl. ¶¶ 148-53. Plaintiff theorizes that he conferred benefits **upon Mr. Ran and Ms. Guan** by paying one-half of his AdSTM income to Mr. Ran. Compl. ¶¶ 149-153. The basis for the notion that Qi Tech "knowingly benefitted" from this scheme is found in the allegations of paragraph 154 of the Complaint, where Plaintiff asserts that "Mr. Ran was a corporate officer of Qi Tech." Compl. ¶ 154. This allegation does not state that Qi Tech received any benefit at all, and thus fails to satisfy the elements of Section 1593A. While these points, in and of themselves, are sufficient to dismiss Count II, Plaintiff further fails to allege that any supposed violation committed by Qi

8

Tech was "knowing" as is required by the plain text of the statute.² In sum, Count II does not allege that Qi Tech was the knowing beneficiary of any financial gain at Plaintiff's expense in violation of § 1593A.

    C. *The Complaint fails because Mr. Ran's knowledge is not imputed to Qi Tech, and therefore Qi Tech did not act "knowingly."*

In addition, Plaintiff's theory, to the extent it is comprehensible, seems to depend on the imputation to Qi Tech of Mr. Ran's knowledge of his receipt of payments from Plaintiff based on Plaintiff's AdSTM income.³ This theory runs afoul of hornbook law. To be sure, the knowledge of an agent is ordinarily imputed to the principal. *Fulwiler v. Peters,* 179 Va. 769, 776 (1942). As applied here, Plaintiff alleges that Mr. Ran is Qi Tech's agent, and seems to contend that Mr. Ran's knowledge that Plaintiff made payments to Mr. Ran himself, for the personal benefit of Mr. Ran and Ms. Guan, is imputed to the alleged principal, Qi Tech. But the knowledge of the agent is not be imputed to the principal in two circumstances applicable here: (1) where it appears from the agent's behavior that he would not report the information to the principal; and (2) where the agent acts out of a personal motive or interest that is adverse to the principal's interests. *Allen Realty Co. v. Holbert,* 227 Va. 441, 446 (1984); *see also In re Derivium Capital, LLC,* 716 F.3d 355, 367-68 (4th Cir. 2013) (recognizing the "adverse interest" exception, under which "the wrongs of an agent are not imputed to the principal if the agent

---

² Certainly, Plaintiff's statement in paragraph 147 of the Complaint that all defendants "knowingly benefitted" from participation in a venture violative of § 1593A is the sort of formulaic recitation of elements rendered insufficient under *Twombly* and *Iqbal*.

³ The term "knowingly" "requires proof of knowledge of the facts that constitute the offense." *Bryan v. United States,* 524 U.S. 184, 193 (1998). In a case involving facts far more egregious than the allegations here, the United States Court of Appeals for the Fourth Circuit recently held that a plaintiff failed to establish that defendants had "knowingly" violated the forced labor provisions of the TVPA. *Muchira v. Al-Rawaf,* 850 F.3d 605, 622 (4th Cir. 2017).

acted adverse to the principal's interests"); *Martin Marietta Corp. v. Gould*, 70 F.3d 768, 771-73 (4th Cir. 1995) (recognizing the "adverse interest" exception).

Here, Mr. Ran's alleged knowledge cannot be imputed to Qi Tech, because as a matter of law, Mr. Ran's interests lie in protecting the ***personal*** income he received from Plaintiff, in furtherance of his PSA with his ex-wife, Ms. Guan. These personal interests conflict with any alleged interest of Qi Tech, and on the facts alleged here, there can be no presumption that Mr. Ran would report this information to Qi Tech. *Allen Realty,* 227 Va. at 446. In sum, Plaintiff's allegations do not give rise to any plausible or legitimate inference that Qi Tech knowingly received financial or other benefits from participation in a venture that engaged in human trafficking. Count II must be dismissed as against Qi Tech.[4]

### III. Count V Fails to State a Claim Against Qi Tech upon which Relief may be Granted.

A. *Plaintiff's allegation that Qi Tech and AdSTM entered into Mentor-Protégé Agreements refutes his claim for unjust enrichment*.

In Count V, Plaintiff alleges that Qi Tech was unjustly enriched at Plaintiff's expense. Specifically, Plaintiff contends that he conferred a benefit upon Qi Tech "in good faith and with the reasonable expectation he would be fairly compensated for his services in accordance with representations made by Ms. Guan to [Plaintiff] as well as representations by Ms. Guan to the United States Citizenship and Immigration Services pursuant to AdSTM's application for [Plaintiff's] H1-B work visa."[5] Compl. ¶ 184. Plaintiff says that Qi Tech "requested and

---

[4] On the bare allegations of this case, any argument that Mr. Ran's knowledge is imputed to Qi Tech would not only run afoul of *Twombly* and *Iqbal,* but would also contravene the requirement that criminal statutes like the TVPA be strictly construed. *Crandon,* 494 U.S. at 158; *American Broadcasting Corp.*, 347 U.S. at 296.

[5] In Count V, Plaintiff claims that he began rendering services to Qi Tech in October 2008 and that such work has continued on until the present. Compl. ¶ 184. This is in direct contravention to allegations made earlier in the Complaint, which state that Plaintiff performed work for Qi Tech from October 2010 until August 2014. Compl. ¶ 122.

accepted" his services and "should have reasonably expected to pay [him] the full amount of his salary for those services." Compl. ¶ 187.

Plaintiff fails to state a valid claim against Qi Tech for unjust enrichment under Virginia law. To state a cause of action for unjust enrichment, a plaintiff must allege that: (1) he conferred a benefit on the defendant; (2) the defendant knew of the benefit and should reasonably have expected to repay the plaintiff; and (3) the defendant accepted or retained the benefit without paying for its value. *Schmidt v. Household Finance Corp., II*, 276 Va. 108, 116 (2008). Here, Plaintiff's conclusory allegations in Count V are belied by other facts pleaded throughout the Complaint.

First, Plaintiff specifically alleges that Qi Tech and AdSTM entered into several Mentor-Protégé Agreements for the provision of management and support services. Compl. ¶ 119. *See* 13 C.F.R § 124.520 (stating that the Small Business Administration's Mentor-Protégé Program "is designed to encourage approved mentors to provide various forms of business development assistance to protégé firms. This assistance may include ***technical and/or management assistance***; financial assistance in the form of equity investments and/or loans; subcontracts; and/or assistance in performing prime contracts with Government through joint venture arrangements") (emphasis added). Even drawing all inferences in Plaintiff's favor, any reasonable reading of the Complaint suggests that Plaintiff's work for Qi Tech was done pursuant to these agreements, which specifically contemplate the sort of technical assistance provided by Plaintiff. Accordingly, Qi Tech had no obligation to compensate Plaintiff for these services—this fact alone ends the inquiry. To be sure, under the terms of any such agreements, Plaintiff would be expected to do certain work for Qi Tech despite being employed by AdSTM.

11

Because these agreements were in place, such work did not trigger an obligation on the part of Qi Tech to compensate Plaintiff.

Moreover, AdSTM, not Qi Tech, was Plaintiff's employer and was the party responsible for paying Plaintiff's salary. In fact, the Complaint expressly admits this point. *See* Compl. ¶ 113. Plaintiff's claim that he was not compensated fairly for his services is further undermined by the allegation that he was paid nearly $80,000 in bonuses—including one bonus payment from Qi Tech—over an approximately four-year period. Compl. ¶ 115 (noting that from October 2010 through August 2014, Plaintiff received approximately $79,000 in bonus payments). Under any measure, Plaintiff's claim for unjust enrichment fails the standard set forth by the Supreme Court of Virginia because Qi Tech had no obligation to compensate Plaintiff.

B. *Plaintiff's claim for unjust enrichment is barred by the applicable statute of limitations.*

In Virginia, the statute of limitations for a claim of unjust enrichment is three years. *See Belcker v. Kirkwood*, 238 Va. 430, 433 (1989). Importantly, "[t]he statute of limitations for unjust enrichment begins to run at the time the unjust enrichment occurred ... not when a party knew or should have known of the unjust enrichment." *Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc.*, 299 F. Supp. 2d 565, 576 (E.D. Va. 2004) (internal citations omitted).

Here, Plaintiff's claim for unjust enrichment is based on work performed for Qi Tech from October 2010 through August 2014. Compl. ¶ 122. Application of the three-year statute of limitations bars the majority of Plaintiff's claim. To be sure, as Plaintiff describes it, each instance of unjust enrichment occurred at the moment he was not compensated for the work performed for Qi Tech. *See, e.g., Primrose Dev. Corp. v. Benchmark Acquisition Fund I, Ltd. Partnership*, 47 Va. Cir. 296, 298 (Loudoun Cir. Ct. 1998) ("a cause of action for unjust enrichment accrues when the unjust enrichment of the defendant actually occurs; that is, at the

12

moment the expected compensation is not paid"). Considered in this light, any work Plaintiff performed for Qi Tech prior to March 24, 2014—three years before the Complaint was filed—is time-barred and not properly before the Court.[6]

## CONCLUSION

For the foregoing reasons, Qi Tech respectfully requests that the Court dismiss the Complaint as against Qi Tech, and grant any such other and further relief as it deems proper.

Dated: April 25, 2017

Respectfully submitted,

QI TECH, LLC.

By: _____/s/_____

Robert R. Vieth
VSB No. 24304
Mihir V. Elchuri
VSB No. 86582
Attorneys for Defendant Qi Tech, LLC
HIRSCHLER FLEISCHER,
A PROFESSIONAL CORPORATION
8270 Greensboro Drive, Suite 700
Tysons, VA 22102
Telephone: 703.584.8900
Facsimile: 703.584.8901
E-mail: rvieth@hf-law.com
melchuri@hf-law.com

---

[6] In addition to the arguments set forth herein, Qi Tech expressly adopts and incorporates all arguments made by any other defendants in motions to dismiss the Complaint, to the extent those arguments would apply to Qi Tech.

13

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of April 2017, I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of Court for the Eastern District of Virginia, Alexandria Division, using the Court's CM/ECF system, which thereby caused the above to be served electronically on all registered users of the Court's CM/ECF system who have filed notices of appearance in this matter.

                                                              /s/

Mihir V. Elchuri
VSB No. 86582
Attorney for Defendant Qi Tech, LLC
HIRSCHLER FLEISCHER,
A PROFESSIONAL CORPORATION
8270 Greensboro Drive, Suite 700
Tysons, VA 22102
Telephone:    703.584.8900
Facsimile:      703.584.8901
E-mail:           melchuri@hf-law.com

8737319-2 042417.00001