IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| FEI GUAN,                             : | |
|     Plaintiff,            : | |
|                             : | Case No. 1:17cv00332 |
|                             : | (JCC/IDD) |
| v.                                         : | |
|                             : | |
| BING RAN, et al,                    : | |
|     Defendants,       : | |

DEFENDANT ALICE GUAN'S
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

      Pursuant to Rule 12 (b) (6), Federal Rules of Civil Procedure, Alice Guan respectfully submits this memorandum in support of her motion to dismiss the Amended Complaint as against her for failure to state a claim upon which relief can be granted.

**STATEMENT OF CASE AS SET FORTH IN AMENDED COMPLAINT**

      Plaintiff is the brother of Alice Guan.  He came to the United States in 2008 to work for defendant Advanced Systems Management and Technology, Inc. (AdSTM).  Alice Guan was the sole founder of AdSTM.  Plaintiff came to work for AdSTM and voluntarily came to the U.S.  The complaint alleges that during the period October 2008 to August 2014, plaintiff payed to defendant Bing Ran personally one half of his take-home pay.

      The complaint claims that these payments were based on an amendment to a property settlement agreement between Alice Guan and Bing Ran.  While claiming that the payments were based on the amendment to the property settlement agreement, Plaintiff conversely states that he never saw such an agreement.

      Plaintiff attempts to make out claims under 18 U.S.C. § 1595, which gives to a victim of the Federal Trafficking Victims Protection Act (TVPA) civil remedies.  Plaintiff claims that defendant Alice Guan is guilty of forcing her brother (the plaintiff) into peonage, involuntary servitude, slavery, and/or forced labor. (Counts I, II and III)

Nothing could be further from the truth. Plaintiff is a well-educated, well paid individual who has had the freedom to leave his employment at AdSTM at any time, to go where he wants and to associate with anyone including his family living in the area. There is no violation, particularly by defendant Alice Guan, either as an individual or as an agent of AdSTM, of the Act, and such claims against her should be dismissed.

In addition to the claims involving violation of the TVPA, there is a claim against Alice Guan of unjust enrichment. (Count IV) There is no allegation in the Amended Complaint that Alice Guan received any money, or other thing of value either personally or as an agent of AdSTM, from plaintiff that would constitute unjust enrichment. The only money Alice Guan received from plaintiff was $1,300 per month rent payments for rental of a home for plaintiff and his family to live in and reimbursement of a portion of the utilities used by the family in that home. There is no allegation that such rent or utilities were other than reasonable.

Count V of the Amended Complaint is not directed to Alice Guan.

**STATEMENT OF FACTS AS ALLEGED IN THE AMENDED COMPLAINT**

The Amended Complaint alleges that at all times relevant to the Amended Complaint, Alice Guan acted as an agent of AdSTM (Compl. Par.7). There are no allegations against Alice Guan acting in her personal capacity that would attach liability to her personally for the claims made in the complaint.

The complaint alleges that in early 2008, Alice Guan offered Plaintiff a position at AdSTM (Compl. Par. 20); that the offer of employment was made by Ms. Guan acting as an agent of AdSTM (Compl. Par.21); that Ms. Guan verbally on behalf of AdSTM indicated that Plaintiff's salary would be in the $70K – $80K range (Compl. Par.22). Plaintiff was actually paid a starting annual salary of $75,000 which in September 2014 was increased to an annual salary of $104,000. (See salary table attached to the Amended Complaint)

The complaint alleges that an agreement made as part of an amendment to a property settlement agreement between Bing Ran and Alice Guan had in it a provision that Plaintiff would pay ½ of his wages to Mr. Ran (Compl. Par.25).

The complaint alleges that Alice Guan arranged for plaintiff to rent a home from her for $1,300 per month (Compl. Par. 30, 35).  There is no allegation that such rental amount was unreasonable or not market rate.

The complaint alleges that as a part of the employment contract plaintiff signed there was a standard non-compete clause (Compl. Par. 38-44).  There is no allegation that the non-compete clause was out of ordinary for such an employment contract.  Plaintiff alleges that Alice Guan did not communicate to him prior to his arrival in the U.S. that he would be required to enter into a non-compete agreement.  (Compl. Par. 192)  That statement is false, as the offer letter signed by Plaintiff months before he came to the U.S. clearly states that as part of employment with AdSTM he would be required to enter into a non-compete agreement. (See offer letter attached to Amended Complaint)

The complaint alleges that after arriving in the U.S., but before beginning working for AdSTM, plaintiff was told about the payment of ½ of his salary to Bing Ran (Compl. Par.70). Plaintiff states that he expressed concern about this but felt compelled to agree to it (Compl. Par. 74).

The complaint alleges that beginning in October 2008, plaintiff sent a check payable to Mr. Ran personally to his home address representing one-half of his net pay from AdSTM. Plaintiff alleges that he made these payments to Mr. Ran from October 2008 to September 2014 (Compl. Par. 119).  Of significance to defendant Alice Guan, there is no allegation that she personally or as an agent of AdSTM, or AdSTM itself, ever received any of the money paid by plaintiff to Bing Ran.

Of significance to the claims under TVPA, plaintiff specifically denies that any of the funds he paid to Bing Ran were in payment of a debt (Compl. Par.121-129).

There are other allegations in the complaint about bonuses plaintiff received and work that plaintiff did on behalf of defendant QiTech, LLC, but these Allegations are not directed against Alice Guan.

**STANDARD OF REVIEW**

A complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face [cites omitted]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable…." (*Ashcraft v Iqbal*, 556 U.S. 662 (2009)). The Supreme Court further said in *Ashcraft*,

> A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do [cite omitted]. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." (at p. 678).

**ARGUMENT**

1. **No Allegations Against Alice Guan Personally**

The Amended Complaint clearly states that all of the actions of Alice Guan relative to the complaint were done in her capacity as an agent of AdSTM. (Compl. Par. 7) There are no allegations in the Amended Complaint that Alice Guan acted in her individual capacity that would attach any liability to her personally.

2. **Plaintiff Has Made No Allegations of a Cognizable Claim under the Trafficking Victims Protection Act.**

The claims against Alice Guan in Counts I, II, and III are all claims that Ms. Guan violated provisions of the TVPA and therefore under 18 U.S.C. § 1595 (Civil Remedy) she is liable to plaintiff.

For any claim under the TVPA to succeed the defendant must first be adjudged guilty of peonage, slavery, involuntary servitude or forced labor, each of which terms have specific definitions in the law.

> "'Peonage' has been defined as 'a status or condition of compulsory service, based upon the indebtedness of the peon to the master...The peon can release himself therefrom…by payment of the debt, but otherwise, the service is enforced.'" (*Stein v World-wide Plumbing Supply, Inc.,* 71 F. Supp 3d 320 (E.D.N.Y 2017) (quoting *Clyatt v United*

*States,* 197 U.S. 207 (1905))

Without a debt that is underlying the servitude there is no peonage. Plaintiff in his Amended Complaint expressly denies any such debt that he owed that might be the subject of peonage (Compl. Par. 121-129). Contrarily, Plaintiff also makes allegation of an "imagined debt". (Compl. Par. 161). There is no such thing as an imagined debt for purposes of the claim of peonage. There is either a debt or there is not, he either owed money for a debt or he did not, and Plaintiff clearly denies any such debt existed. Therefore, any claim in Counts I, II, or III based upon allegations of peonage should be dismissed.

Slavery was defined in *Plessy v Ferguson*, 163 U.S. 537 ( 1896 ) as follows:

> Slavery implies involuntary servitude – a state of bondage; the ownership of mankind as a chattel, or at least the control of the labor and services of one man for the benefit of another, and the absence of a legal right to the disposal of his own person, property and services.

Nowhere in this Amended Complaint is there even a hint that plaintiff was in slavery to anyone and particularly to Alice Guan. Any claims in Counts I, II, or III based on allegations of slavery should be dismissed.

Involuntary servitude has also been defined by the courts. In *Turner v. Unification Church,* 743 F. Supp. 367 (D.R.I. 1978) the Court said, "Involuntary servitude usually includes both elements of physical restraint and complete psychological domination." (at p 375). The *Turner* court then quoted from *United States v. Shackney*, 333 F. 2d 475 (2nd Cir 1964) as follows:

> But a holding in involuntary servitude means to us action by the master causing the servant to have, or to believe he has, no way to avoid continued service or confinement, in Mr. Justice Harlan's language, "superior and overpowering force, constantly present and threatening," 203 U.S. at 34, 27 S. Ct. at 16 – not a situation where the servant knows he has a choice between continued service and freedom, even if the master

5

> has led him to believe that the choice may entail consequences that are exceedingly bad. (at p 486).

Certainly from the allegations in the Amended Complaint, plaintiff had a choice – even if those choices lead in his mind to "exceedingly bad" consequences. And in fact, while the Amended Complaint tries to paint a picture of a man who had no choices, plaintiff had the choice of either seeking other employment with companies who would sponsor his visa or of returning to Japan or China. While plaintiff characterizes those choices as bad, that is not enough to make out a claim of involuntary servitude under TVPA. At no time does plaintiff say in the Amended Complaint that he had no choice – only that the choices in his estimation were not good.

Any claim in Counts I, II, or III of the Amended Complaint based on allegations of involuntary servitude should be dismissed.

Forced labor was defined by the Fourth Circuit Court of Appeals in the case of *Muchina v. Al Rawaf*. (4th Cir, 2017, Case No 15-2198).

> …"forced labor" situations involve circumstances such as squalid or otherwise intolerable living conditions, extreme isolation (from family and the outside world), threats of inflicting harm upon the victim or others (including threats of legal process such as arrest or deportation) and exploitation of the victims lack of education and familiarity with the English language, all of which are used "to prevent [vulnerable] victims from leaving and to keep them bound to their captors. [cites omitted].

None of these elements necessary for a finding of forced labor are alleged in the Amended Complaint.

All claims in Counts I, II, or III based on allegations of forced labor should be dismissed.

Since Counts I, II, and III are all predicated on a violation of the TVPA, and since there are no allegations to sustain a finding of peonage, slavery, involuntary servitude, or forced labor by Alice Guan against plaintiff, all of those counts should be dismissed as to her.

### 3. Unjust Enrichment

Count IV of the Amended Complaint makes a claim of unjust enrichment against Alice Guan. However, the allegations in the Amended Complaint do not set forth the necessary elements of a claim of unjust enrichment.

In Virginia, unjust enrichment is a modern form of the common law action of assumpsit for money had and received.  *VA. Elec & Power Co. v Norfolk S. Ry. Co.*, 2002 Va. Cir. LEXIS 80 (Circuit Court of City of Norfolk July 3, 2001); *also see Liebau v. Seven Oaks Ltd. Pshp*., 1991 Va. Cir. LEXIS 574 (Circuit Court of Fairfax County May 9, 1991).   Whenever one person possesses money that equitably belongs to another, the "law creates the privity and implies the promise necessary to support the action," so that the rightful owner may recover the money through an action for unjust enrichment.  2A Michie's Jur., Assumpsit § 17 (1993); see, e.g., *Shores v. Shaffer*, 206 Va. 775, 781 (1966); *Furr v. Arnold*, 202 Va. 684, 689 (1961); *Robertson v. Robertson*, 137 Va. 378, 381 (1923).

To make a claim of unjust enrichment, plaintiff would have needed to allege that Alice Guan had in her possession money that equitably belongs to plaintiff and that he as the rightful owner should be able to recover this money.  The allegations in the Amended Complaint are that Mr. Ran has in his possession money that equitably belongs to plaintiff.  Checks payable to Mr. Ran personally amounting to one-half of plaintiff's salary were sent directly to Mr. Ran at his home (Compl. Par. 97-98).  There are no allegations that Alice Guan ever received any of the plaintiff's money, or has any of it in her possession, therefore the claim of unjust enrichment is not properly alleged against Alice Guan.

The unjust enrichment claim, for the most part, is barred by the statute of limitations. Va. Code § 8.01-246 (4) provides that the limitation period for bringing a claim upon an implied

contract (which is unjust enrichment) is 3 years. The statute of limitations begins to run at the time the unjust enrichment occurred. It is alleged that this began in 2008, with the sending of the first check to Mr. Ran, and ended in August 2014. The complaint in this matter was filed March 24, 2017, therefore all claims for payments made prior to March 24, 2014 are barred by the statute of limitations.

**CONCLUSION**

This is not a case of peonage, slavery, involuntary servitude or forced labor. Those elements are the necessary and underlying basis of Counts I, II and III of the Amended Complaint, and those counts are without factual basis and should be dismissed.

The purpose of the federal anti-trafficking acts is to punish those who are exploiting human beings through peonage, slavery, involuntary servitude or forced labor. The reasons Congress passed these laws is set out in 22 U.S.C. § 7101, a portion of which is cited below:

(a) The purposes of this chapter are to combat trafficking in persons, a contemporary manifestation of slavery whose victims are predominantly women and children.

(b) (4) Traffickers primarily target women and girls, who are disproportionately affected by poverty, the lack of access to education, chronic unemployment, discrimination and the lack of economic opportunities in countries of origin.

(5) Traffickers often transport victims from their home communities…away from family and friends, religious institutions and other sources of protection and support, leaving victims defenseless and vulnerable.

Plaintiff is attempting to use these trafficking laws to collect money he claims was wrongfully paid, not to remedy human trafficking. The law gives to parties different ways and means to collect wrongfully paid money and they do not involve the TVPA.

A review of legitimate TVPA violation cases involve such actions as taking the victim's passport; holding the victim in isolation; prohibiting the victim from ever leaving the home; telling the victim they will immediately be escorted out of the country. (See *Cruz v. Maypa*, 773 F. 3e 138 (4th Cir 2014); *Kiwanuka v. Bakilana*, 844 F. Supp. 107 (D.D.C. 2012)). None of these conditions, or conditions like them, have been alleged in this case and Counts I, II and III involving the TVPA should be dismissed.

Count IV, Unjust Enrichment should also be dismissed as to defendant Alice Guan whether individually or as an agent of AdSTM. Neither Alice Guan nor AdSTM have, and never have had, any money belonging to plaintiff that equitably belongs to plaintiff. The only money alleged to have been paid to Alice Guan was in the form of legitimate rent and utilities for a home where plaintiff and his family lived. Additionally, the vast majority of this claim is outside the statute of limitations and should be dismissed as barred by the statute.

Respectfully Submitted,

ALICE GUAN,
By Counsel

_____/s/_____

Tate Bywater Fuller Mickelsen & Tull, PLC
Counsel for Defendant Alice Guan
Douglas E. Bywater         Bar No 9137
James R. Tate              Bar No 6241
Paul Mickelsen             Bar No 71274
Travis D. Tull             Bar No 47486
2740 Chain Bridge Road
Vienna, VA  22181
703-938-5100 Tel
703-255-1097 Fax
debywater@tatebywater.com
jtate@tatebywater.com
pmickelsen@tatebywater.com
ttull@tatebywater.com


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT on the 23rd day of May, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing (NEF) to at least the following counsel of record:

| | |
|---|---|
| Joshua Erlich, Esquire<br>Davia Craumer, Esquire<br>Katherine Herrmann, Esquire<br>THE ERLICH LAW OFFICE, PLLC<br>2111 Wilson Boulevard, Suite 700<br>Arlington, VA 22201<br>jerlich@erlichlawoffice.com<br>dcraumer@erlichlawoffice.com<br>kherrmann@erlichlawoffice.com<br>Counsel for Plaintiff Fei Guan<br><br>James B. Kinsel, Esquire<br>Rebecca Bricken Segal, Esquire<br>PROTORAE LAW, PLLC<br>1921 Gallows Toad, Suite 950<br>Tysons, VA 22182<br>jkinsel@protoraelaw.com<br>rsegal@protoraelaw.com<br>Counsel for Defendant Advanced System Technology and Management, Inc. | Robert R. Vieth, Esquire<br>Mihir V. Elchuri, Esquire<br>HIRSCHLER FLEISCHER, P.C.<br>8270 Greensboro Drive, Suite 700<br>Tysons, VA 22102<br>rvieth@hf-law.com<br>melchuri@hf-law.com<br>Counsel for Defendant Qi Tech, LLC<br><br>William B. Cummings, Esquire<br>WILLIAM B. CUMMINGS, P.C.<br>Post Office Box 1177<br>Alexandria, VA 22313<br>wbcpclaw@aol.com<br>Counsel for Defendant Bing Ran |