IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |
|---|---|
| FEI GUAN,<br><br>        Plaintiff,<br><br>v.<br><br>BING RAN, *et al.*,<br><br>        Defendants. | Civil Action No. 1:17-cv-332 (JCC/IDD) |

**DEFENDANT QI TECH, LLC'S
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Defendant Qi Tech, LLC ("Qi Tech"), by counsel, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rules"), states as follows in support of its Motion to Dismiss the Amended Complaint filed by Plaintiff Fei Guan ("Plaintiff"):

**PRELIMINARY STATEMENT**

This case is primarily a dispute between Plaintiff Guan and his employer, Advanced Systems Technology and Management, Inc. ("AdSTM"), which at relevant times was owned by Plaintiff's sister (Defendant Alice Guan) and her former husband (Defendant Bing Ran). Qi Tech, which has a contractual mentor-protégé relationship with AdSTM, does not belong in this case. Although the claims against Qi Tech are serious and inflammatory – involving allegations under the federal anti-human trafficking laws – the factual allegations of the Amended Complaint are insufficient to raise any plausible inference of wrongdoing by Qi Tech. Instead, the allegations highlight the attenuated connection between Plaintiff and Qi Tech, and require dismissal of the Amended Complaint as against Qi Tech.

## STATEMENT OF FACTS

Plaintiff is a lawful permanent resident of the United States and resides in the Commonwealth of Virginia. Am. Compl. ¶ 1. Born in China, he came to the United States in 2008 under a temporary H-1B work visa sponsored by Defendant AdSTM. Am. Compl. ¶¶ 1, 31.

An engineering and consulting firm headquartered in Northern Virginia, AdSTM was founded in 1996 by Defendant Alice Guan ("Ms. Guan"), who is Plaintiff's sister. Am. Compl. ¶ 3, 5. From April 3, 1985 until October 29, 2006, Ms. Guan was married to Defendant Bing Ran ("Mr. Ran"). Am. Compl. ¶ 3. In 2000, four years after Ms. Guan founded AdSTM, Mr. Ran began assisting Ms. Guan in running the company. Am. Compl. ¶ 4. Though now separated, Ms. Guan and Mr. Ran still jointly manage AdSTM. Am. Compl. ¶ 5.

In early 2008, while Plaintiff was living in Japan, Ms. Guan offered Plaintiff a job with AdSTM as an analyst. Am. Compl. ¶ 20. Ms. Guan formalized this offer in a letter dated February 28, 2008. Am. Compl. ¶ 21. The Amended Complaint alleges that Ms. Guan verbally represented that Plaintiff's annual salary would be between $70,000 and $80,000. Am. Compl. ¶ 22. Plaintiff accepted the job offer with AdSTM, which agreed to sponsor Plaintiff's H1-B temporary work visa. Am. Compl. ¶¶ 24, 28, 29. Ms. Guan submitted Plaintiff's visa paperwork in April 2008 and Plaintiff moved to the United States with his family in September 2008. Am. Compl. ¶¶ 29, 31. After Ms. Guan arranged for Plaintiff and his family to lease a home that she

owned for a monthly rent of $1,300, Plaintiff started working for AdSTM in October 2008.[1] Am. Compl. ¶¶ 30, 94.

Plaintiff's claims center on a Parenting, Support, and Property Settlement Agreement ("PSA") negotiated between Mr. Ran and Ms. Guan during their separation. Am. Compl. ¶ 45. Qi Tech, of course, was not a party to the PSA and is not mentioned in it. According to Plaintiff, although the PSA contained a provision that set his employment term with AdSTM at five years with an annual salary of $75,000, the PSA allegedly required that Plaintiff pay Mr. Ran one-half of his net income received from AdSTM over the course of this five-year term. Am. Compl. ¶ 51. Under the terms of the PSA, if Plaintiff failed to make such payments on a monthly basis, Mr. Ran and AdSTM would have no obligation to "pay and hire" Plaintiff. *Id*. Subsequently, this provision of the PSA was amended to reflect an adjustment to Plaintiff's term of employment from five years to approximately three years, but the requirement that Plaintiff pay back half of his net income to Mr. Ran remained unchanged. Am. Compl. ¶¶ 56-58.

Plaintiff's theory of liability is based on the requirement that he pay one-half of his AdSTM salary to Mr. Ran, an arrangement that he allegedly knew nothing about before accepting the position, Am. Compl. ¶¶ 52, 56, but accepted based in part on an alleged fear concerning his and his family's immigration status. Am. Compl. ¶¶ 76-80.

Beginning in October 2008, Plaintiff sent a check for half of his net income from AdSTM to Mr. Ran. Am. Compl. ¶ 97. According to Plaintiff, he continued sending such a check to Mr.

---

[1] The Amended Complaint also alleges that Plaintiff signed a non-competition agreement with AdSTM that was signed by Ms. Guan on behalf of the company. *See* Am. Compl. ¶¶ 38-44. These factual allegations relate solely to Count V of the Amended Complaint—which seeks declaratory relief against AdSTM only—and thus do not implicate Qi Tech.

Ran every month until August 2014. Am. Compl. ¶ 118.[2] From October 2008 through September 2014, the Amended Complaint avers that Plaintiff paid Mr. Ran a total of $160,000 of the net income Plaintiff earned while employed at AdSTM. Am. Compl. ¶ 119. Similarly, Plaintiff alleges that between September 2008 and June 2012, he paid Ms. Guan nearly $60,000 in rent (not including utilities) out of his net income earned from AdSTM. Am. Compl. ¶ 120.

While employed with AdSTM, Plaintiff alleges he performed work for another company, Qi Tech. Am. Compl. ¶ 133. Though a separate business entity, Qi Tech had entered into numerous Mentor/Protégé Agreements with AdSTM for the provision of management and support services. Am. Compl. ¶ 148. Plaintiff contends that, at Mr. Ran's direction, he was required to perform work for Qi Tech from October 2010 until September 2014. Am. Compl. ¶ 151. Plaintiff acknowledges that he was paid a bonus from Qi Tech in 2011, in addition to numerous other bonus payments from AdSTM through September 2014. Am. Compl. ¶ 144. He further admits that he was reimbursed for certain expenses incurred on behalf of Qi Tech. Am. Compl. ¶ 152. These offhand references to Qi Tech are the extent of the factual allegations asserted against the company in the Amended Complaint.

On March 24, 2017, Plaintiff filed his Complaint, alleging five counts variously against AdSTM, Mr. Ran, Ms. Guan, and Qi Tech. *See* Complaint, dated March 24, 2017 (ECF No. 1). After Qi Tech, AdSTM, and Mr. Ran moved to dismiss the Complaint under Rule 12(b)(6), Plaintiff filed an Amended Complaint pursuant to Rule 15. Though the Amended Complaint

---

[2] In early September 2014, Mr. Ran told Plaintiff that Plaintiff was permitted to stop sending Mr. Ran these monthly checks. Am. Compl. ¶ 122. Then, in November 2014, Mr. Ran asked Plaintiff to execute a legal agreement indicating that the payments Plaintiff had made from October 2008 through August 2014 were personal loans. Am. Compl. ¶ 123. Mr. Ran had never previously described Plaintiff's required payments as loans and, similarly, the agreement Mr. Ran wanted Plaintiff to sign did not describe the payments as loans. Am. Compl. ¶¶ 124, 126. Ultimately, Plaintiff never signed the agreement proffered by Mr. Ran. Am. Compl. ¶ 129.

contains five counts, Qi Tech is named as a defendant only in Count II. Count II alleges that in addition to the other defendants, Qi Tech "knowingly benefitted financially from participation in a venture," in violation of the peonage provisions of the Trafficking Victims Protection Reauthorization Act of 2003 ("TVPA" or the "Act"), thus violating 18 U.S.C. § 1593A. Compl. ¶¶ 175. For the reasons that follow, the Amended Complaint fails to state a claim against Qi Tech upon which relief may be granted. Accordingly, the Court should dismiss the Complaint as to Qi Tech pursuant to Rule 12(b)(6).

## ARGUMENT

### I.  Standard of Review.

A motion under Rule 12(b)(6) tests the sufficiency of a claim as set forth on the face of the complaint. *See, e.g., Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). On a motion to dismiss, a court must accept the plaintiff's factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court "need not accept the [plaintiff's] legal conclusions drawn from the facts," nor need it "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000); *see also Herman v. Lackey*, 309 Fed. App'x. 778, 781 (4th Cir. 2009).

While a claim need not be detailed, it must contain sufficient factual allegations to make it plausible with "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal,* 556 U.S. 662 (2009). To survive a motion to dismiss, a complaint must contain

5

sufficient factual matter which, if accepted as true, plainly sets forth "a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678.  The Court must identify and reject legal conclusions unsupported by factual allegations because they are not entitled to any presumption of truth.  *Id.*  "[B]are assertions" that amount to nothing more than a "formulaic recitation of the elements" must be rejected.  *Id.* (internal citations omitted).  Second, assuming the veracity of "well-pleaded factual allegations," a court must conduct a "context-specific" analysis drawing on "its judicial experience and common sense" and determine whether the factual allegations "plausibly suggest an entitlement to relief."  *Id.* at 679.

The plausibility standard requires more than a showing of a "sheer possibility that a defendant has acted unlawfully."  *Id.* at 678.  A claim is plausible only where it includes "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  In addition to the complaint, a court also may examine "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007).

Further, with respect to Count II, Plaintiff's complicated theory of the case must not only pass the test of *Twombly* and *Iqbal*, but is also held to a higher standard because § 1593A is found in the United States Criminal Code.  Plaintiff has filed serious charges of human trafficking against Qi Tech under this provision.  As a criminal statute, § 1593A must be strictly construed in favor of the defendant.  *Crandon v. United States,* 494 U.S. 152, 158 (1990) (applying the rule of lenity where governing standard in a civil case was embedded in a criminal statute); *Federal Communications Comm. v. American Broadcasting Corp.,* 347 U.S. 284, 296 (1954) (criminal statutes must be strictly construed even when they are applied in civil cases). As the Fourth Circuit observed with respect to the forced labor provisions of the TVPA, the Act

is "intended to address *serious* trafficking." *Muchira,* 850 F.3d at 618 (emphasis in original).

Considering this standard, the Complaint fails to state a claim against Qi Tech.

### II. Count II Fails to State a Claim Against Qi Tech upon which Relief may be Granted.

A. *The Amended Complaint fails to allege that Qi Tech was involved in any predicate unlawful conduct*.

Count II of the Complaint purports to state a claim against Qi Tech for violation of 18 U.S.C. § 1593A. The text of § 1593A makes clear that liability under that provision is conditioned on participating in a predicate offense involving other anti-peonage statutes:

> Whoever knowingly benefits, financially or by receiving anything of value, from *participation* in a venture which has engaged *in any act in violation of section 1581(a), 1592, or 1595(a)*, knowing or in reckless disregard of the fact that the venture has engaged in such violation, shall be fined under this title or imprisoned in the same manner as a completed violation of such section.

18 U.S.C. § 1593A (emphasis added). Thus, to satisfy the test of § 1593A, a plaintiff must first show a violation of § 1581(a), § 1592, or § 1595(a).

The Amended Complaint fails to allege any such violation by Qi Tech. Critically, Count I attempts to state a claim for violation of § 1581(a), but Qi Tech is *not* named as a defendant in that Count. Likewise, the Amended Complaint contains no allegations that Qi Tech—or any other defendant—violated § 1592. There is no allegation that Qi Tech engaged in any "participation" in any "venture," as required under the statute. And, although Plaintiff invokes § 1595(a) throughout the Amended Complaint, he does so only because it is the enabling statute under which he filed suit—not because he alleges an independent cause of action for a violation of § 1595(a). Because Plaintiff's Amended Complaint fails to allege any of the predicate statutory violations required by § 1593A, Count II fails to state a claim against Qi Tech upon which relief may be granted.

B.      *The allegations in the Amended Complaint do not state a claim that Qi Tech benefitted financially from peonage.*

Count II fails as to Qi Tech for another reason: Plaintiff does not plausibly allege that Qi Tech benefitted financially from any purported peonage. Plaintiff asks the Court to conclude that, merely because Plaintiff performed services for Qi Tech, Qi Tech therefore knowingly benefitted from a venture "constituting a violation of the TVPA" -- because it allegedly reaped a financial benefit without properly compensating him. Am. Compl. ¶¶ 180-83.

The allegations in the Amended Complaint will not support this conclusion. Plaintiff's conclusory allegations in the text of Count II are refuted by the facts alleged in the body of the Amended Complaint. Plaintiff specifically alleges that Qi Tech and AdSTM entered into several Mentor-Protégé Agreements for the provision of management and support services. Am. Compl. ¶ 148. *See* 13 C.F.R § 124.520 (describing the Small Business Administration's Mentor-Protégé Program). Under these agreements, AdSTM, as mentor, provides "various forms of business development assistance to protégé firms," such as Qi Tech. *Id*. "This assistance may include ***technical and/or management assistance***; financial assistance in the form of equity investments and/or loans; subcontracts; and/or assistance in performing prime contracts with Government through joint venture arrangements." *Id.*

Thus, even drawing all inferences in Plaintiff's favor, any reasonable reading of the Amended Complaint suggests that Plaintiff's work for Qi Tech was done pursuant to these agreements, which specifically contemplate the sort of technical assistance provided by employees of AdSTM, such as Plaintiff, to protégé firms like Qi Tech. Accordingly, Qi Tech had no obligation to compensate Plaintiff for these services. To be sure, under the terms of any such agreements, Plaintiff would be expected to do certain work for Qi Tech despite being

8

employed by AdSTM. Because these agreements were in place, such work did not trigger an obligation on the part of Qi Tech to compensate Plaintiff. This fact alone ends the inquiry.[3]

Moreover, AdSTM, not Qi Tech, was Plaintiff's employer and was the party responsible for paying Plaintiff's salary. The Amended Complaint expressly admits this point. *See* Am. Compl. ¶ 142. Plaintiff's claim that he was not compensated fairly for his services is further undermined by the allegation that he was paid nearly $80,000 in bonuses—including one bonus payment from Qi Tech—over an approximately four-year period. Am. Compl. ¶ 144 (noting that from October 2010 through September 2014, Plaintiff received approximately $79,000 in bonus payments). Under any measure, Plaintiff's claim against Qi Tech fails because the Amended Complaint does not plausibly allege that Qi Tech participated in an illegal venture.

    C.    *The Complaint fails because Mr. Ran's knowledge is not imputed to Qi Tech, and therefore Qi Tech did not act "knowingly."*

Plaintiff's theory of liability against Qi Tech appears to depend on the imputation to Qi Tech of Mr. Ran's knowledge of receipt of payments from Plaintiff based on Plaintiff's AdSTM income.[4] *See* Am. Compl. ¶ 179 (noting that Mr. Ran was a corporate officer of Qi Tech). This theory runs afoul of hornbook law. To be sure, the knowledge of an agent is ordinarily imputed to the principal. *Fulwiler v. Peters,* 179 Va. 769, 776 (1942). As applied here, Plaintiff alleges that Mr. Ran is Qi Tech's agent, and seems to contend that Mr. Ran's knowledge that Plaintiff made payments to Mr. Ran himself, for the personal benefit of Mr. Ran and Ms. Guan, is

---

[3] It bears emphasis that under Plaintiff's theory, the Mentor/Protégé Agreements—which are a creature of the U.S. Small Business Administration—would form the basis of a violation of the federal human trafficking statute. This conclusion is untenable.

[4] The term "knowingly" "requires proof of knowledge of the facts that constitute the offense." *Bryan v. United States,* 524 U.S. 184, 193 (1998). In a case involving facts far more egregious than the allegations here, the United States Court of Appeals for the Fourth Circuit recently held that a plaintiff failed to establish that defendants had "knowingly" violated the forced labor provisions of the TVPA. *Muchira v. Al-Rawaf,* 850 F.3d 605, 622 (4th Cir. 2017).

imputed to the alleged principal, Qi Tech. But the knowledge of the agent is not imputed to the principal in two circumstances applicable here: (1) where it appears from the agent's behavior that he would not report the information to the principal; and (2) where the agent acts out of a personal motive or interest that is adverse to the principal's interests. *Allen Realty Co. v. Holbert,* 227 Va. 441, 446 (1984); *see also In re Derivium Capital, LLC*, 716 F.3d 355, 367-68 (4th Cir. 2013) (recognizing the "adverse interest" exception, under which "the wrongs of an agent are not imputed to the principal if the agent acted adverse to the principal's interests"); *Martin Marietta Corp. v. Gould*, 70 F.3d 768, 771-73 (4th Cir. 1995) (recognizing the "adverse interest" exception).

Here, Mr. Ran's alleged knowledge cannot be imputed to Qi Tech, because as a matter of law, Mr. Ran's interests lie in protecting the ***personal*** income he received from Plaintiff, in accordance with his PSA with his ex-wife, Ms. Guan. These personal interests conflict with any alleged interest of Qi Tech, and on the facts alleged here, there can be no presumption that Mr. Ran would report this information to Qi Tech. *Allen Realty,* 227 Va. at 446. In sum, Plaintiff's allegations do not give rise to any plausible or legitimate inference that Qi Tech knowingly received financial or other benefits from participation in a venture that engaged in human trafficking. Count II must be dismissed as against Qi Tech.[5]

## CONCLUSION

For the foregoing reasons, Qi Tech respectfully requests that the Court dismiss the Complaint as against Qi Tech, and grant any such other and further relief as it deems proper.

---

[5] On the bare allegations of this case, any argument that Mr. Ran's knowledge is imputed to Qi Tech would not only run afoul of *Twombly* and *Iqbal,* but would also contravene the requirement that criminal statutes like the TVPA be strictly construed. *Crandon,* 494 U.S. at 158; *American Broadcasting Corp.*, 347 U.S. at 296.

Dated: May 24, 2017                    Respectfully submitted,

                                                            QI TECH, LLC

By:   */s/ Robert R. Vieth*
      Robert R. Vieth, Esq. (VSB No. 24304)
      Mihir V. Elchuri, Esq. (VSB No. 86582)
      HIRSCHLER FLEISCHER, PC
      8270 Greensboro Drive, Suite 700
      Tysons, VA 22102
      Telephone: 703.584.8900
      Facsimile: 703.584.8901
      E-mail:    rvieth@hf-law.com
                    melchuri@hf-law.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of May 2017, I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of Court for the Eastern District of Virginia, Alexandria Division, using the Court's CM/ECF system, which thereby caused the above to be served electronically on all registered users of the Court's CM/ECF system who have filed notices of appearance in this matter.

/s/ Robert R. Vieth
Robert R. Vieth, Esq. (VSB No. 24304)
Mihir V. Elchuri, Esq. (VSB No. 86582)
HIRSCHLER FLEISCHER, PC
8270 Greensboro Drive, Suite 700
Tysons, VA 22102
Telephone: 703.584.8900
Facsimile: 703.584.8901
E-mail: rvieth@hf-law.com
melchuri@hf-law.com

8805131-2 042417.00001

12