UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| FEI GUAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No. 1:17-cv-00332 (JCC/IDD) |
| BING RAN; ALICE GUAN; ) | |
| ADVANCED SYSTEMS MANAGEMENT ) | |
| AND TECHNOLOGY, INC.; and ) | |
| QI TECH, LLC ) | |
| ) | |
| Defendants. ) | |
| ) | |

**PLAINTIFF'S OPPOSITION TO
DEFENDANT QI TECH, LLC'S MOTION TO DISMISS AMENDED COMPLAINT**

Plaintiff Fei Guan ("Plaintiff" or "Mr. Guan"), by counsel, for his Memorandum in Opposition to Defendant Qi Tech, LLC's ("Qi Tech") Motion to Dismiss his Amended Complaint, states as follows:

**INTRODUCTION**

Plaintiff's Amended Complaint asserts one claim against Qi Tech under the Trafficking Victims Protection Act of 2000, as amended and reauthorized ("TVPA"): Count II, benefitting financially from peonage, slavery, and trafficking in persons.

Plaintiff has pled facts in Count II that sufficiently allege Qi Tech's liability for this claim. Plaintiff should be permitted to proceed on Count II against Defendant.

**STATEMENT OF FACTS**

In 1985, Mr. Ran and Ms. Guan married. Am. Compl. ¶¶ 3-4. In 1996, Ms. Guan formed AdSTM, a Virginia corporation, as its sole owner; Mr. Ran began assisting with AdSTM's

1

operation in 2000. Am. Compl. ¶¶ 16-17. Mr. Ran and Ms. Guan separated in 2006, entering into a Parenting, Support, and Property Settlement Agreement ("PSA") shortly thereafter. Am. Compl. ¶ 45.

In early 2008, while Mr. Guan was still living in Japan, Ms. Guan offered Mr. Guan a position at AdSTM for a salary of approximately $70,000.00 or $80,000.00 per year. Am. Compl. ¶¶ 20-22. Mr. Guan accepted the offer of employment pursuant to these terms. Am. Compl. ¶ 24. Ms. Guan hired an attorney to complete Mr. Guan's paperwork for his H-1B work visa. Am. Compl. ¶ 28. On the visa paperwork, AdSTM represented that Mr. Guan's proposed wage rate would be equal to the prevailing wage rate, $51,168.00 per year. Am. Compl. ¶ 29. Ms. Guan also arranged for Mr. Guan to lease a home she owned. Am. Compl. ¶ 30. Mr. Guan, on an H-1B visa, and his wife and child, on H4 visas, arrived in the United States at the end of September 2008. Am. Compl. ¶¶ 31-32.

In June 2008, Ms. Guan and Mr. Ran negotiated an amendment to the PSA ("June 2008 Amendment") that provided for Mr. Guan and Yu Guan's employment as follows:

> As long as AdSTM has revenue of not less than $3M/year, Bing Ran and AdSTM shall employ Yu Guan and Fei Guan continuously for 5 years (for Yu Guan: starting from July 1, 2008. For Fei Guan: starting October 1, 2008), and proactively sponsor their H-1 and Green Card processes. Each of their salary will be $75K/year. Each of them will give Bing Ran half of their net income from AdSTM. If they purposely do not pay Bing on a monthly basis and even refuse to pay Bing after Bing's reminder, then Bing and AdSTM have no obligation to pay and hire them. Yue Guan agrees not to compete with AdSTM in any way during this 5-year period and this commitment will not expire even if Yu and Fei Guan breach the contract.

Am. Compl. ¶ 51. Ms. Guan and Mr. Ran did not inform Mr. Guan of the terms of the June 2008 Amendment or the effect it would have on his employment prior to his arrival in the United

2

States. Am. Compl. ¶ 52.

After Mr. Guan moved to the United States, but before he began working, Ms. Guan informed Mr. Guan he would be required to pay one half of his AdSTM net income to Mr. Ran every month. Am. Compl. ¶ 70. If Mr. Guan failed to make such payments, his employment would be terminated and he would have to leave the United States because he was here on an H-1B visa. Am. Compl. ¶ 71. Under threat of losing his job and his immigration status, Mr. Guan had no choice but to agree to pay. Am. Compl. ¶ 74. Mr. Guan began working for AdSTM, under the direct supervision of Ms. Guan. Am. Compl. ¶¶ 94-95.

In October 2008, Ms. Guan and Mr. Ran negotiated another amendment to the PSA ("October 2008 Amendment") that altered the terms of Mr. Guan and Yu Guan's employment as follows:

> As long as AdSTM has annual revenue of not less that $3 million dollars/year, Yu Guan will be employed until 2/1/2011, and Fei Guan will be employed until 10/14/2011. Fei Guan's salary will be $75,000/year and Yu Guan's salary will be $90,000/year starting 10/16/2008. Each of them will give Bing Ran half of their net incomes from AdSTM (except Yu Guan can keep his income for the period of 7/1/2008 to 10/15/2008). If they do not pay Bing on a monthly basis and still do not pay Bing after Bing's reminder, then their employments with AdSTM shall be terminated. However, if they work on projects later and their hours are charged to the government as direct labors, then they shall not pay Bing for any those incomes. After AdSTM's annual revenue drops below $3 million dollars/year, Yu Guan and Fei Guan will be continually hired by AdSTM without pays and they will pay their insurances through AdSTM plan.

Am. Compl. ¶ 58. The October 2008 Amendment also required AdSTM to support Mr. Guan's H1 visa and green card. Am. Compl. ¶ 59. Ms. Guan and Mr. Ran did not inform Mr. Guan of the terms of the October 2008 Amendment. Am. Compl. ¶ 60.

3

Also in October 2008, Ms. Guan required Mr. Guan to sign an "Employee Proprietary Information and Non-Compete Agreement" ("Non-Compete"), which prevented him from discussing his compensation than anyone other than his immediate supervisor or higher-level officers at AdSTM. Am. Compl. ¶ 39. The Non-Compete also laid out several other critical provisions:

> In the event of a breach or threatened breach by Employee of any of the provisions of this Agreement, Employee agrees that Employer – in addition to and not in limitation of any other rights, remedies, or damages available to Employer at law or in equity – shall be entitled to a permanent injunction in order to prevent or restrain any such breach by Employee or by Employee's partners, agents, representatives, servants, employees, and/or any and all persons directly or indirectly acting for or with Employee.

Am. Compl. ¶ 40.

> Employee also agrees that for 2 (two) years after Employee is no longer employed by the ASTM, INC., Employee will not directly or indirectly solicit, agree to perform, or perform services of any type that ASTM, INC. can render ("Services") for any person or entity who paid or engaged ASTM, INC. for Services, and with whom Employee had any dealing while employed by ASTM, INC. This restriction also applies to assisting any employer or third party.

Am. Compl. ¶ 41.

> Employee agrees that during the term of his employment with ASTM, INC. he or she shall not submit his or her resume to any prospective employer (including consent to the use of his or her name in a proposal) who is competing against ASTM, INC. for the products and services sold by ASTM, INC.

Am. Compl. ¶ 42. In October 2008, under penalty of losing his new employment and immigration status, began making payments to Mr. Ran. Am. Compl. ¶ 97. As a result of the Non-Compete and the terms of his H-1B visa, Mr. Guan was unable to work with an alternate employer. Am. Compl. ¶ 85.

4

Mr. Guan sent checks to Mr. Ran's home address every month until August 2014. Am. Compl. ¶ 118. On one occasion in 2011, Mr. Guan did not mail a check to Mr. Ran immediately upon receiving his paycheck because Mr. Ran was in China. Am. Compl. ¶ 112. Ms. Guan called Mr. Guan to ask why he had not mailed the check, and told Mr. Guan he would have trouble from Mr. Ran if he did not pay. Am. Compl. ¶¶ 113-114. Mr. Guan interpreted her statements to mean that he would lose his job if he did not pay immediately. Am. Compl. ¶ 115. At that time, Mr. Guan was still in the United States on an H-1B visa, and Mr. Guan knew if he was terminated, he and his family would have to leave the United States. Am. Compl. ¶¶ 116-117.

In October 2010, Mr. Ran became Mr. Guan's immediate supervisor. Am. Compl. ¶ 130. At Mr. Ran's direction, Mr. Guan began performing work, purchasing computers and other supplies, for Qi Tech, a separate business entity that Mr. Ran controlled. Am. Compl. ¶ 134; Am. Compl. ¶ 150. During the same time period, Mr. Guan began receiving bonuses from Mr. Ran through AdSTM. Am. Compl. ¶ 131. In late 2011, Mr. Guan received one bonus check from Mr. Ran through Qi Tech and received reimbursements purchasing Qi Tech supplies, but did not otherwise receive compensation from Qi Tech. Am. Compl. ¶ 152; Am. Compl. ¶ 155. Toward the end of 2011, Esther Purushotham ("Ms. Purushotham"), an accountant at AdSTM who also performed accounting services for Qi Tech, informed Mr. Guan that he should not be receiving compensation in the form of bonuses from Qi Tech because he was not an employee of Qi Tech. Am. Compl. ¶ 140. In October 2013, Mr. Guan requested that he stop receiving bonuses from Mr. Ran, and in exchange he would no longer be required to pay one half his net salary to Mr. Ran. Am. Compl. ¶ 138. Mr. Ran denied Mr. Guan's request and continued to demand monthly payments. Am. Compl. ¶ 139. In total, Mr. Guan received approximately $79,000.00 in bonuses after taxes. Am. Compl. ¶ 144.

In November 2014, Mr. Ran approached Mr. Guan and requested that he sign a legal agreement saying the monthly payments Mr. Guan made had been a "personal loan." Am. Compl. ¶ 123. Mr. Ran had never previously described the payments as a loan. Am. Compl. ¶ 124. The June 2008 Amendment and October 2008 Amendment did not describe the payments as a loan. Am. Compl. ¶ 126. Mr. Guan never signed an agreement saying the payments were a loan. Am. Compl. ¶ 129.

In total, Mr. Guan paid Mr. Ran approximately $160,000.00 of the net income Mr. Guan earned at AdSTM. Am. Compl. ¶ 119. In total, Mr. Guan paid Ms. Guan nearly $60,000.00 in rent, not including utilities, of the net income Mr. Guan earned at AdSTM. Am. Compl. ¶ 120.

## ARGUMENT

**Rule 12(b) Standard**

Rule 8 of the Federal Rules of Civil Procedure provides that "a pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) "does not resolve contests surrounding the facts, the merits of the claims, or the applicability of defenses." *Presely v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). Instead, at the pleading stage, a court assumes the truth of all facts alleged in the complaint and must construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *See Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000); *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

More recently, the Supreme Court has explained that, to survive a motion to dismiss, a complaint must contain factual information to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint can withstand a motion to dismiss "even if it appears 'that a recovery is very remote and unlikely.'" *Id.* (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). Finally, in *Aschcroft v. Iqbal*, 556 U.S. 662, 663 (2009), the Supreme Court further explained that to achieve facial plausibility, a complaint should contain sufficient factual allegations to support a reasonable inference that defendant is liable for the misconduct alleged. *See id*. at 663.

## I. THIS COURT SHOULD DENY QI TECH'S MOTION TO DISMISS COUNT II OF PLAINTIFF'S AMENDED COMPLAINT, AS PREDICATE UNLAWFUL CONDUCT IS NOT REQUIRED FOR LIABILITY TO BE FOUND UNDER SECTION 1593A OF THE TVPA.

The TVPA authorizes a civil claim against anyone who "knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in any act in violation of section 1581(a), 1592, or 1595(a), knowing or in reckless disregard of the fact that the venture has engaged in such violation." 18 U.S.C. § 1593A.

Qi Tech contends Plaintiff has failed to state a claim against it because Plaintiff has not demonstrated that Qi Tech has violated any of the sections referenced in Section 1593(a).

Section 1595(a) of the TVPA provides:

> An individual who is a victim of a violation *of this chapter* may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys['] fees.

18 U.S.C. § 1595(a) (emphasis added). "This chapter," as used in Section 1595, contains all trafficking related violations, Sections 1581-1594. Section 1595(a) is an enabling statute

7

allowing civil suit for trafficking violations; Plaintiff is not required to allege a separate violation of Section 1595(a) in order to recover under it.

Because, as discussed *infra*, Plaintiff has pled that Qi Tech knowingly or recklessly participated in a venture that engaged in an act in violation of this section, as it references other sections, Plaintiff has satisfied the predicate unlawful conduct required by Section 1593A. Specifically, Plaintiff has adequately alleged that Qi Tech participated in a venture with Mr. Ran and AdSTM with knowledge that AdSTM and Mr. Ran were actively violating the trafficking provisions in Sections 1581-1594, and that Qi Tech benefitted financially from its participation in such venture. This Court should deny Qi Tech's motion to dismiss with respect to Count II.

**II.     THIS COURT SHOULD DENY QI TECH'S MOTION TO DISMISS COUNT II OF PLAINTIFF'S AMENDED COMPLAINT, AS MR. GUAN HAS SUFFICIENTLY ALLEGED THAT QI TECH BENEFITTED FINANCIALLY FROM THE PEONAGE AND TRAFFICKING VIOLATIONS OF AdSTM WITH KNOWLEDGE AdSTM WAS ENGAGED IN SUCH VIOLATIONS.**

**A.     Qi Tech Received a Financial Benefit from Mr. Guan through its Relationship with AdSTM.**

Qi Tech attempts to minimize its involvement in the matters alleged in the Amended Complaint, but during the relevant period, Qi Tech and AdSTM were substantially intertwined. By virtue of the series of Mentor/Protégé Agreements, in which AdSTM served in the role of "mentor" and Qi Tech as "protégé," AdSTM provided loans to Qi Tech, and the companies shared both office space and personnel, including Mr. Ran, who served as CEO of both companies. Am. Compl. ¶¶ 147-149. Mr. Guan performed work for Qi Tech for a period of four years, from October 2010 until September 2014, and Mr. Guan used his own money, not money provided to him by AdSTM, to purchase equipment for Qi Tech at the request of Mr. Ran. Am. Compl. ¶¶ 150-151. From 2010 to 2014, Qi Tech, not AdSTM, reimbursed Mr. Guan for the

purchases he made for Qi Tech by issuing him approximately twenty business checks after the purchases had been made. Am. Compl. ¶¶ 152-153.

Despite Qi Tech's assertion that it had no obligation to compensate Mr. Guan for the services he performed, Qi Tech did issue a bonus check to Mr. Guan. Am. Compl. ¶ 136. Qi Tech issued the check at Mr. Ran's direction. Am. Compl. ¶ 135. Taking all reasonable inferences in favor of the Plaintiff, Qi Tech believed it was required to compensate Mr. Guan, but did not continue doing so.

Plaintiff alleges in the Amended Complaint that he performed work for Qi Tech and Qi Tech received value as a result of that work. Because Mr. Guan was performing work for Qi Tech, Qi Tech was required to compensate him and failed to do so. *See Lagasan v. Al-Ghasel*, 92 F. Supp. 3d 445, 455 (E.D. Va. 2015). At the motion to dismiss phase, the Court assumes all facts pled are true and takes all inferences in favor of the plaintiff. Plaintiff has sufficiently alleged that Qi Tech benefitted financially from its participation in the venture with AdSTM and Mr. Ran.

### B.  Qi Tech Participated in a Venture with AdSTM and Mr. Ran with Knowledge that AdSTM and Mr. Ran were Acting in Violation of Trafficking Laws.

As Qi Tech notes, ordinarily, the knowledge of an agent may be imputed to the principal. *See, e.g.*, *Fulwiler v. Peters*, 179 Va. 769, 776 (1942). However, despite Qi Tech's claims, the adverse interest exception to this general rule does not apply to the matter at hand for two reasons.

First, Mr. Ran's actions were not adverse to Qi Tech. "Where the conduct of the agent is such as to raise a clear presumption that he would not communicate to the principal the facts in controversy, or where the agent, acting nominally as such, is in reality acting in his own business or for his own personal interest ***and*** adversely to the principal, or has a motive in concealing the

9

facts from the principal, this rule (of imputed knowledge) does not apply." *Fuwiler*, 179 Va. 776 (emphasis added). Mr. Ran acted in his own interest by compensating Mr. Guan for his labor and services in the manner described in the Amended Complaint. Mr. Ran required regular payments from Mr. Guan of half of the net income he earned at AdSTM, as set forth in the PSA. Contrary to Qi Tech's assertion, Mr. Ran was not working adversely to Qi Tech; he was working in service of Qi Tech. Mr. Guan's employment benefitted Qi Tech in two ways, as Mr. Guan provided Qi Tech not only with his labor, but also with financial support through provision of Mr. Guan's personal funds to Qi Tech. Am Compl. ¶¶ 150-151. By employing Mr. Guan and exploiting the arrangement in the PSA, Mr. Ran ensured Qi Tech would have additional support from Mr. Guan without paying him for it. As Mr. Ran's actions were to the benefit of Qi Tech, his knowledge can be imputed to Qi Tech under *Fuwiler*. 179 Va. 769 at 776.

Second, as noted in the case of *In re Derivium*, "if an agent is the sole representative of a principal, then that agent's fraudulent conduct is imputable to the principal regardless of whether the agent's conduct was adverse to the principal's interests." 716 F.3d at 368 (quoting *Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340, 359 (3d Cir. 2001)). The sole actor rule thus operates as a limitation on the adverse interest exception when an agent is the principal's sole representative. *Id*. at 359 ("the sole agent has no one to whom he can impart his knowledge, or from whom he can conceal it . . . the corporation must bear the responsibility for allowing an agent to act without accountability").

During the relevant time period, Mr. Ran was the CEO of Qi Tech, a small business. He was in control of the company. He signed all of Mr. Guan's checks on behalf of Qi Tech. Based on the facts alleged in the Amended Complaint, Mr. Guan acted as the sole representative of Qi

Tech. For this reason, the adverse interest exception discussed in *Fuwiler* does not apply, and Mr. Ran's knowledge may be imputed to Qi Tech.

Plaintiff has sufficiently alleged that Qi Tech, either through its own direct knowledge or the knowledge imputed to it, knowingly participated in the venture described in the Amended Complaint, and that Qi Tech benefitted financially from this venture. For these reasons, Plaintiff has sufficiently alleged Count II against Qi Tech, and Qi Tech's Motion to Dismiss should be denied.

### III.   PLAINTIFF REQUESTS LEAVE TO AMEND IF THE COURT FINDS DEFICIENCIES IN THE COMPLAINT.

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend "shall be freely given when justice so requires. '[T]his mandate is to be heeded.'" *Foman v. Davis*, 371 U.S. 178, 182, (1962). There are limited circumstances under which leave to amend should be denied. The Fourth Circuit has held that "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Laber v. Harvey,* 438 F.4d 404, 426 (4th Cir. 2006) (quoting *Johnson v. Oroweat Foods Co.,* 785 F.2d 503, 509 (4th Cir. 1986)). The discussion above demonstrates that Plaintiff's allegations as set forth in the operative Amended Complaint state plausible claims for relief under *Iqbal* and *Twombly* and, as such, Plaintiff is not acting in bad faith. If the Court determines that the Amended Complaint is insufficiently pled, Plaintiff requests leave to amend his Amended Complaint to provide further specificity as to any particulars of his claims. Such amendment would not be futile, and would be in the interests of justice without causing prejudice to Defendant.

## **CONCLUSION**

For the foregoing reasons, this Court should deny Defendant's Motion to Dismiss as to Count II of Plaintiff's Amended Complaint and allow Plaintiff to proceed with this claim against Qi Tech. If the Court finds deficiencies in Plaintiff's pleading, Plaintiff respectfully requests the Court grant him leave to amend his Amended Complaint to provide further specificity as to any particulars of his claims.

Respectfully submitted,

Dated: June 6, 2017      By:      /s/
Joshua Erlich (VA Bar No. 81298)
Davia Craumer (VA Bar No. 87426)
Katherine L. Herrmann (VA Bar No. 83203)
**The Erlich Law Office, PLLC**
2111 Wilson Blvd
Suite 700
Arlington, VA  22201
Tel:     (703) 791-9087
Fax:    (703) 351-9292
Email: jerlich@erlichlawoffice.com
            dcraumer@erlichlawoffice.com
            kherrmann@erlichlawoffice.com

*Counsel for Plaintiff Fei Guan*

## CERTIFICATE OF SERVICE

I hereby certify that on June 6, 2017, a true copy of the foregoing was filed electronically with the Clerk of the Court and served electronically using the CM/ECF upon:

    Douglas E. Bywater (VSB No. 9137)
    James R. Tate (VSB No. 6241)
    Paul Mickelsen (VSB No. 71274)
    Travis D. Tull (VSB No. 47486)
    Tate Bywater Fuller Mickelsen & Tull, PLC
    2740 Chain Bridge Road
    Vienna, VA 22181
    debywater@tatebywater.com
    jtate@tatebywater.com
    pmickelsen@tatebywater.com
    ttull@tatebywater.com

    *Counsel for Defendant Alice Guan*

    James B. Kinsel (VSB No. 44247)
    Rebecca Bricken Segal (VSB No. 73403)
    PROTORAE LAW, PLLC
    1921 Gallows Road, Suite 950
    Tysons, VA, 22182
    jkinsel@protoraelaw.com
    rsegal@protoraelaw.com

    *Counsel for Defendant Advanced Systems Technology & Management, Inc.*

    Mihir V. Elchuri (VSB No. 86582)
    HIRSCHLER FLEISHER,
    A PROFESSIONAL CORPORATION
    8270 Greensboro Drive, Suite 700
    Tysons, VA 22102
    melchuri@hf-law.com

    *Counsel for Defendant Qi Tech, LLC*

    William B. Cummings, Esq. (VSB No. 6469)
    William B. Cummings, P.C.
    Post Office Box 1177
    Alexandria, VA 22313
    wbcpclaw@aol.com

    *Counsel for Bing Ran*

      /s/
_____
Joshua Erlich, VA Bar No. 81298
Davia Craumer, VA Bar No. 87426
Katherine Herrmann, VA Bar No. 83203
The Erlich Law Office, PLLC
2111 Wilson Blvd.
Suite 700
Arlington, VA  22201
Tel:    (703) 791-9087
Fax:   (703) 351-9292
Email: jerlich@erlichlawoffice.com
          dcraumer@erlichlawoffice.com
          kherrmann@erlichlawoffice.com

*Counsel for Plaintiff Fei Guan*