UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| FEI GUAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 1:17-cv-00332 (JCC/IDD) |
| BING RAN; ALICE GUAN; | ) |
| ADVANCED SYSTEMS MANAGEMENT | ) |
| AND TECHNOLOGY, INC.; and | ) |
| QI TECH, LLC | ) |
| | ) |
| Defendants. | ) |
| | ) |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT BING RAN'S MOTION TO DISMISS AMENDED COMPLAINT**

Plaintiff Fei Guan ("Plaintiff" or "Mr. Guan"), by counsel, for his Memorandum in Opposition to Defendant Bing Ran's ("Mr. Ran") Motion to Dismiss his Amended Complaint, states as follows:

**INTRODUCTION**

Plaintiff's Amended Complaint asserts four claims against Mr. Ran under the Trafficking Victims Protection Act of 2000, as amended and reauthorized ("TVPA"): (1) Count I, peonage; (2) Count II, benefitting financially from peonage, slavery, and trafficking in persons; and (3) Count III, trafficking in persons. In addition, Count IV asserts a claim against Mr. Ran for unjust enrichment.

Plaintiff has pled facts in Counts I, II, III and IV that sufficiently allege Mr. Ran's liability for these claims. Plaintiff should be permitted to proceed on all four counts against Defendant.

**STATEMENT OF FACTS**

In 1985, Mr. Ran and Ms. Guan married. Am. Compl. ¶¶ 3-4. In 1996, Ms. Guan formed AdSTM, a Virginia corporation, as its sole owner; Mr. Ran began assisting with AdSTM's operation in 2000. Am. Compl. ¶¶ 16-17. Mr. Ran and Ms. Guan separated in 2006, entering into a Parenting, Support, and Property Settlement Agreement ("PSA") shortly thereafter. Am. Compl. ¶ 45.

In early 2008, while Mr. Guan was still living in Japan, Ms. Guan offered Mr. Guan a position at AdSTM for a salary of approximately $70,000 or $80,000 per year. Am. Compl. ¶¶ 20-22. Mr. Guan accepted the offer of employment pursuant to these terms. Am. Compl. ¶ 24. Ms. Guan hired an attorney to complete Mr. Guan's paperwork for his H-1B work visa. Am. Compl. ¶ 28. On the visa paperwork, AdSTM represented that Mr. Guan's proposed wage rate would be equal to the prevailing wage rate, $51,168.00 per year. Am. Compl. ¶ 29. Ms. Guan also arranged for Mr. Guan to lease a home she owned. Am. Compl. ¶ 30. Mr. Guan, on an H-1B visa, and his wife and child, on H4 visas, arrived in the United States at the end of September 2008. Am. Compl. ¶¶ 31-32.

In June 2008, Ms. Guan and Mr. Ran negotiated an amendment to the PSA ("June 2008 Amendment") that provided for Mr. Guan and Yu Guan's employment as follows:

> As long as AdSTM has revenue of not less than $3M/year, Bing Ran and AdSTM shall employ Yu Guan and Fei Guan continuously for 5 years (for Yu Guan: starting from July 1, 2008. For Fei Guan: starting October 1, 2008), and proactively sponsor their H-1 and Green Card processes. Each of their salary will be $75K/year. Each of them will give Bing Ran half of their net income from AdSTM. If they purposely do not pay Bing on a monthly basis and even refuse to pay Bing after Bing's reminder, then Bing and AdSTM have no obligation to pay and hire them. Yue Guan agrees not to compete with AdSTM in any way during this 5-year period and this commitment will not expire even if Yu

2

and Fei Guan breach the contract.

Am. Compl. ¶ 51. Ms. Guan and Mr. Ran did not inform Mr. Guan of the terms of the June 2008 Amendment or the effect it would have on his employment prior to his arrival in the United States. Am. Compl. ¶ 52.

After Mr. Guan moved to the United States, but before he began working, Ms. Guan informed Mr. Guan he would be required to pay one half of his AdSTM net income to Mr. Ran every month. Am. Compl. ¶ 70. If Mr. Guan failed to make such payments, his employment would be terminated and he would have to leave the United States because he was here on an H-1B visa. Am. Compl. ¶ 71. Under threat of losing his job and his immigration status, Mr. Guan had no choice but to agree to pay. Am. Compl. ¶ 74. Mr. Guan began working for AdSTM, under the direct supervision of Ms. Guan. Am. Compl. ¶¶ 94-95.

In October 2008, Ms. Guan and Mr. Ran negotiated another amendment to the PSA ("October 2008 Amendment") that altered the terms of Mr. Guan and Yu Guan's employment as follows:

> As long as AdSTM has annual revenue of not less that $3 million dollars/year, Yu Guan will be employed until 2/1/2011, and Fei Guan will be employed until 10/14/2011. Fei Guan's salary will be $75,000/year and Yu Guan's salary will be $90,000/year starting 10/16/2008. Each of them will give Bing Ran half of their net incomes from AdSTM (except Yu Guan can keep his income for the period of 7/1/2008 to 10/15/2008). If they do not pay Bing on a monthly basis and still do not pay Bing after Bing's reminder, then their employments with AdSTM shall be terminated. However, if they work on projects later and their hours are charged to the government as direct labors, then they shall not pay Bing for any those incomes. After AdSTM's annual revenue drops below $3 million dollars/year, Yu Guan and Fei Guan will be continually hired by AdSTM without pays and they will pay their insurances through AdSTM plan.

Am. Compl. ¶ 58. The October 2008 Amendment also required AdSTM to support Mr. Guan's

H1 visa and green card. Am. Compl. ¶ 59. Ms. Guan and Mr. Ran did not inform Mr. Guan of the terms of the October 2008 Amendment. Am. Compl. ¶ 60.

Also in October 2008, Ms. Guan required Mr. Guan to sign an "Employee Proprietary Information and Non-Compete Agreement" ("Non-Compete"), which prevented him from discussing his compensation than anyone other than his immediate supervisor or higher-level officers at AdSTM. Am. Compl. ¶ 39. The Non-Compete also laid out several other critical provisions:

> In the event of a breach or threatened breach by Employee of any of the provisions of this Agreement, Employee agrees that Employer – in addition to and not in limitation of any other rights, remedies, or damages available to Employer at law or in equity – shall be entitled to a permanent injunction in order to prevent or restrain any such breach by Employee or by Employee's partners, agents, representatives, servants, employees, and/or any and all persons directly or indirectly acting for or with Employee.

Am. Compl. ¶ 40.

> Employee also agrees that for 2 (two) years after Employee is no longer employed by the ASTM, INC., Employee will not directly or indirectly solicit, agree to perform, or perform services of any type that ASTM, INC. can render ("Services") for any person or entity who paid or engaged ASTM, INC. for Services, and with whom Employee had any dealing while employed by ASTM, INC. This restriction also applies to assisting any employer or third party.

Am. Compl. ¶ 41.

> Employee agrees that during the term of his employment with ASTM, INC. he or she shall not submit his or her resume to any prospective employer (including consent to the use of his or her name in a proposal) who is competing against ASTM, INC. for the products and services sold by ASTM, INC.

Am. Compl. ¶ 42. In October 2008, under penalty of losing his new employment and immigration status, began making payments to Mr. Ran. Am. Compl. ¶ 97. As a result of the

Non-Compete and the terms of his H-1B visa, Mr. Guan was unable to work with an alternate employer. Am. Compl. ¶ 85.

Mr. Guan sent checks to Mr. Ran's home address every month until August 2014. Am. Compl. ¶ 118. On one occasion in 2011, Mr. Guan did not mail a check to Mr. Ran immediately upon receiving his paycheck because Mr. Ran was in China. Am. Compl. ¶ 112. Ms. Guan called Mr. Guan to ask why he had not mailed the check, and told Mr. Guan he would have trouble from Mr. Ran if he did not pay. Am. Compl. ¶¶ 113-114. Mr. Guan interpreted her statements to mean that he would lose his job if he did not pay immediately. Am. Compl. ¶ 115. At that time, Mr. Guan was still in the United States on an H-1B visa, and Mr. Guan knew if he was terminated, he and his family would have to leave the United States. Am. Compl. ¶¶ 116-117.

In October 2010, Mr. Ran became Mr. Guan's immediate supervisor. Am. Compl. ¶ 130. At Mr. Ran's direction, Mr. Guan began performing work, purchasing computers and other supplies, for Qi Tech, a separate business entity that Mr. Ran controlled. Am. Compl. ¶ 134; Am. Compl. ¶ 150. During the same time period, Mr. Guan began receiving bonuses from Mr. Ran through AdSTM. Am. Compl. ¶ 131. In late 2011, Mr. Guan received one bonus check from Mr. Ran through Qi Tech and received reimbursements purchasing Qi Tech supplies, but did not otherwise receive compensation from Qi Tech. Am. Compl. ¶ 152; Am. Compl. ¶ 155. Toward the end of 2011, Esther Purushotham ("Ms. Purushotham"), an accountant at AdSTM who also performed accounting services for Qi Tech, informed Mr. Guan that he should not be receiving compensation in the form of bonuses from Qi Tech because he was not an employee of Qi Tech. Am. Compl. ¶ 140. In October 2013, Mr. Guan requested that he stop receiving bonuses from Mr. Ran, and in exchange he would no longer be required to pay one half his net salary to Mr. Ran. Am. Compl. ¶ 138. Mr. Ran denied Mr. Guan's request and continued to demand monthly

payments. Am. Compl. ¶ 139. In total, Mr. Guan received approximately $79,000.00 in bonuses after taxes. Am. Compl. ¶ 144.

In November 2014, Mr. Ran approached Mr. Guan and requested that he sign a legal agreement saying the monthly payments Mr. Guan made had been a "personal loan." Am. Compl. ¶ 123. Mr. Ran had never previously described the payments as a loan. Am. Compl. ¶ 124. The June 2008 Amendment and October 2008 Amendment did not describe the payments as a loan. Am. Compl. ¶ 126. Mr. Guan never signed an agreement saying the payments were a loan. Am. Compl. ¶ 129.

In total, Mr. Guan paid Mr. Ran approximately $160,000.00 of the net income Mr. Guan earned at AdSTM. Am. Compl. ¶ 119. In total, Mr. Guan paid Ms. Guan nearly $60,000.00 in rent, not including utilities, of the net income Mr. Guan earned at AdSTM. Am. Compl. ¶ 120.

## ARGUMENT

**Rule 12(b) Standard**

Rule 8 of the Federal Rules of Civil Procedure provides that "a pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) "does not resolve contests surrounding the facts, the merits of the claims, or the applicability of defenses." *Presely v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). Instead, at the pleading stage, a court assumes the truth of all facts alleged in the complaint and must construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *See*

*Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000); *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

More recently, the Supreme Court has explained that, to survive a motion to dismiss, a complaint must contain factual information to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint can withstand a motion to dismiss "even if it appears 'that a recovery is very remote and unlikely.'" *Id.* (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). Finally, in *Aschcroft v. Iqbal*, 556 U.S. 662, 663 (2009), the Supreme Court further explained that to achieve facial plausibility, a complaint should contain sufficient factual allegations to support a reasonable inference that defendant is liable for the misconduct alleged. *See id*. at 663.

**Bing Ran Individually**

Mr. Ran's argument that this Court should grant his Motion to Dismiss because Mr. Guan's Amended Complaint refers only to Mr. Ran's actions in his capacity as an agent of AdSTM and Qi Tech is not supported by the facts alleged in Mr. Guan's Amended Complaint or relevant law. Mr. Guan's Amended Complaint sufficiently alleges facts that demonstrate Mr. Ran's individual liability. It is true that the Amended Complaint states, "At all times relevant to this Complaint either Ms. Guan or Mr. Ran, or both, acted as agents of AdSTM." Am. Compl. ¶ 7. However, this is merely an indication that during the relevant time, one of the two individual Defendants, either Ms. Guan or Mr. Ran or both, always worked as an agent of AdSTM; it is not an allegation that Mr. Ran worked only in that capacity.

Critically, there are multiple allegations that Mr. Ran negotiated for his own personal financial benefit in the Parenting, Support, and Property Settlement Agreement ("PSA") and

amendments thereto and that Mr. Ran in fact received those financial benefits. Taking the allegations in the light most favorable to the Plaintiff, as is required at this stage in litigation, it is clear that Plaintiff has made allegations against Mr. Ran personally. This Court should deny Mr. Ran's Motion to Dismiss on this ground.

I.   **THIS COURT SHOULD DISMISS DEFENDANT'S MOTION TO DISMISS COUNTS I, II, AND III OF PLAINTIFF'S AMENDED COMPLAINT BECAUSE MR. GUAN HAS SUFFICIENTLY ALLEGED FACTS DEMONSTRATING MR. RAN'S VIOLATIONS OF THE TRAFFICKING VICTIMS PROTECTION ACT.**

Mr. Ran's Motion to Dismiss adopts the arguments set forth in Advanced System Technology and Management, Inc.'s ("AdSTM") Motion to Dismiss Mr. Guan's Amended Complaint in their entirety. Bing Ran's Mot. to Dismiss Am. Compl. at p. 1 (citing AdSTM's Mot. to Dismiss Am. Compl. (Dkt. 47)). Plaintiff has opposed those arguments in their entirety in a separate filing and adopts his opposition here with the exception of those arguments detailed *infra*. Pl.'s Mem. in Opp. to AdSTM's Mot. to Dismiss Am. Compl. (Dkt. 53). Specifically, there are multiple arguments that AdSTM raised in its Motion to Dismiss that are not logical when applied to Mr. Ran, even though Mr. Ran has adopted them as his own.

A.   **Several Arguments Advanced by AdSTM in its Motion to Dismiss are Inapplicable to Mr. Ran.**

Mr. Ran cannot claim that he lacked knowledge of the arrangement between himself and Ms. Guan with respect to the PSA and its amendments, nor can he claim that he lacked knowledge of Mr. Guan's payments to Mr. Ran. As a result, AdSTM's arguments with respect to the "knowing" and "willful" elements of the TVPA violations do not apply to Mr. Ran,[1] and Mr. Ran has not advanced any further arguments on those issues.

---

[1] Section I.B of AdSTM's Motion to Dismiss.

Mr. Ran cannot claim that he had no role in the trafficking alleged in Count III of Plaintiff's Amended Complaint, as AdSTM alleges.[2] Mr. Ran and Ms. Guan made a mutual agreement, in the PSA and its amendments, to offer employment to Mr. Guan prior to Mr. Guan's arrival in the United States. Am. Compl. ¶¶ 57, 58. Mr. Ran failed to inform Mr. Guan of this critical component of his life in the United States prior to his arrival. *Id*. at ¶¶ 63-64. Ms. Guan told Mr. Guan that Mr. Ran had the ability to make Mr. Guan pay him half of his income every month, carrying the clear implication that Mr. Ran bore the responsibility of forcing Mr. Guan to continue the arrangement. *Id*. at ¶ 71.

### B. Plaintiff Has Sufficiently Alleged Facts Specific to Mr. Ran that Demonstrate Mr. Ran's Involvement in Recruiting, Harboring and/or Transporting Mr. Guan.

The TVPA authorizes a civil claim against anyone who "knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or series in violation of this chapter." 18 U.S.C. § 1590(a). Here, Plaintiff's Amended Complaint contains factual allegations relating to Mr. Ran's recruiting, harboring, and transporting of Mr. Guan.

Prior to Mr. Guan's arrival in the United States, Mr. Ran and Ms. Guan specifically negotiated for his employment at AdSTM. Am. Compl. ¶¶ 57-58. Mr. Ran negotiated for an illegal personal kickback from that employment in the PSA and its June 2008 Amendment that required Mr. Guan to pay one-half his net salary to Mr. Ran every month. *Id*. at ¶ 58. Taking the inferences in the light most favorable to the Plaintiff, Mr. Ran was aware of Ms. Guan's communications with Mr. Guan prior to his arrival in the United States. AdSTM, Ms. Guan, and Mr. Ran coordinated to recruit and transport Mr. Guan to the United States; as a result, Plaintiff

---

[2] Section III of AdSTM's Motion to Dismiss.

has stated a viable claim of trafficking against Mr. Ran and this Court should deny Mr. Ran's Motion to Dismiss.

II. **THIS COURT SHOULD DENY MR. RAN'S MOTION TO DISMISS COUNT IV OF PLAINTIFF'S AMENDED COMPLAINT BECAUSE PLAINTIFF HAS SUFFICIENTLY ALLEGED A CLAIM OF UNJUST ENRICHMENT AGAINST MR. RAN.**

    A. **The Statute of Limitations for Unjust Enrichment Does Not Bar Relief Under this Claim, and is Determined by the Date of the Original Filing.**

Plaintiff concedes there was a typographical error in his Amended Complaint, listing March 24, 2017 as the earliest date for which this Court can grant relief on his unjust enrichment claim. Bing Ran's Mot. to Dismiss Am. Compl. at p. 2. Plaintiff intended that date to read March 24, 2014. However, Mr. Ran's argument that in the original claim, all underpayments prior to May 10, 2014 are outside the statute of limitations is incorrect. *Id*. at 2-3.

In his original Complaint, Plaintiff brought Count V, for unjust enrichment, against all Defendants, including Mr. Ran. Compl. (Dkt. 1) ¶¶ 183-193. The Federal Rules of Civil Procedure provide that an "amendment assert[ing] a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading," relates back to the original date of filing. Fed. R. Civ. Pro. 15(c)(1)(B). As a result, the relevant date for determining the period within the statute of limitations on Mr. Guan's claim of unjust enrichment is March 24, 2017, the date of the original filing.

    B. **Mr. Guan Has Alleged Facts Sufficient to Demonstrate His Entitlement to Equitable Relief from Mr. Ran Individually for Unjust Enrichment.**

In Virginia, plaintiffs must establish three elements to state a cause of action for unjust enrichment: "(1) a benefit conferred on the defendant by the plaintiff; (2) knowledge on the part of the defendant of the conferring of the benefit; and (3) acceptance or retention of the benefit by

10

the defendant in circumstances that render it inequitable for the defendant to retain the benefit without paying for its value." *R.M. Harrison Mech. Corp. v. Decker Indus., Inc.,* 75 Va. Cir. 404, 407 (Va. Cir. Ct. 2008) (citing *Centex Constr. V. Acstar Ins. Co.*, 448 F. Supp. 2d 697, 707 (E.D. Va. 2006)).

In the instant case, Mr. Ran is incorrect about the "crux of Mr. Guan's claim" with respect to unjust enrichment by inappropriately conflating himself in his personal capacity with AdSTM as a corporation. Bing Ran's Mot. to Dismiss Am. Compl. at p. 3. Mr. Ran, as a part of the PSA, negotiated with Ms. Guan to receive half of Mr. Guan's net salary every month. Am. Compl. ¶ 51. Mr. Guan paid Mr. Ran a total of approximately $160,000.00 of his net income over the course of six years. Am. Compl. ¶ 119. Mr. Guan sent these payments directly to Mr. Ran's home. Am. Compl. ¶ 97. Mr. Ran did not pay Mr. Guan back, nor did he provide Mr. Guan with anything else of value in exchange. These negotiations were fundamentally personal in nature; they took place as part of Mr. Ran's divorce. There is no reasonable argument that Mr. Guan was acting as an agent or representative of AdSTM in establishing his property and parental rights pursuant to his own divorce except those times when he and Ms. Guan specifically committed AdSTM to a course of action.

Mr. Ran's argument that the bonus payments from AdSTM to Mr. Guan were intended to offset the personal payments Mr. Guan made to Mr. Ran defies logic. Bing Ran's Mot. to Dismiss Am. Compl. at p. 4. Mr. Guan began making payments to Mr. Ran in 2008; Mr. Guan did not receive any bonuses from AdSTM until October 2010. Am. Compl. ¶ 131. Moreover, the bonus payments came from AdSTM, not Mr. Ran personally. *Id*. Because Mr. Guan conferred the financial benefit on Mr. Ran personally, had Mr. Ran intended to compensate Mr. Guan for those payments, Mr. Ran would have had to pay Mr. Guan directly.

11

Plaintiff conferred a monetary benefit on Mr. Ran; Mr. Ran was aware of the circumstances under which Plaintiff sent him this money, and made it clear that Plaintiff would suffer substantial consequences should Plaintiff not pay. *See* Am. Compl. ¶¶ 111-114. Mr. Ran offers contradictory arguments as to why Mr. Guan is not entitled to an equitable remedy by virtue of his claim of unjust enrichment. First, Mr. Ran argues that an express contract existed that covered Mr. Guan's employment at AdSTM. Bing Ran's Mot. to Dismiss Am. Compl. at p. 4 (referring to the offer letter sent to Mr. Guan by AdSTM, Ex. B to Am Compl.). Even assuming *arguendo* that the offer letter operated as an express contract between Mr. Guan and AdSTM, it is irrelevant to the determination of whether Mr. Guan is entitled to equitable relief from Mr. Ran individually. Mr. Ran defeats his own argument by emphasizing that he had no employment relationship with Mr. Guan. *Id*. at p. 5. It is precisely because there was no contract between Mr. Guan and Mr. Ran in his personal capacity that a colorable claim for unjust enrichment exists. Taking these facts with the deference required at this stage, this is a clear case of unjust enrichment.

Because Mr. Ran accepted (and demanded) a monetary benefit from Mr. Guan without providing Mr. Guan with anything of value in exchange, it is inequitable for him to retain the benefit without paying for its value. Mr. Guan has alleged facts sufficient to support the conclusion that he is entitled to an equitable remedy from Mr. Ran, this Court should deny Mr. Ran's motion to dismiss on Count IV.

### III. PLAINTIFF REQUESTS LEAVE TO AMEND IF THE COURT FINDS DEFICIENCIES IN THE COMPLAINT.

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend "shall be freely given when justice so requires. '[T]his mandate is to be heeded.'" *Foman v. Davis*, 371

U.S. 178, 182, (1962). There are limited circumstances under which leave to amend should be denied. The Fourth Circuit has held that "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Laber v. Harvey,* 438 F.4d 404, 426 (4th Cir. 2006) (quoting *Johnson v. Oroweat Foods Co.,* 785 F.2d 503, 509 (4th Cir. 1986)).

The discussion above demonstrates that Plaintiff's allegations as set forth in the operative Amended Complaint state plausible claims for relief under *Iqbal* and *Twombly* and, as such, Plaintiff is not acting in bad faith. If the Court determines that the Amended Complaint is insufficiently pled, Plaintiff requests leave to amend his Amended Complaint to provide further specificity as to any particulars of his claims. Such amendment would not be futile, and would be in the interests of justice without causing prejudice to Defendant.

## **CONCLUSION**

For the foregoing reasons, this Court should deny Defendant's Motion to Dismiss Count I, II, III, and IV of Plaintiff's Amended Complaint against Bing Ran and allow Plaintiff to proceed with these claims. If the Court finds deficiencies in Plaintiff's pleading, Plaintiff respectfully requests the Court grant him leave to amend his Complaint to provide further specificity as to any particulars of his claims.

Dated:   June 7, 2017                              Respectfully,

                                                   _____/s/_____
                                                   Joshua Erlich, VA Bar No. 81298
                                                   Davia Craumer, VA Bar No. 87426
                                                   Katherine Herrmann, VA Bar No. 83203

                THE ERLICH LAW OFFICE, PLLC
                2111 Wilson Blvd., Ste. 700
                Arlington, VA  22201
                Tel:    (703) 791-9087
                Fax:   (703) 722-8114
                Email: jerlich@erlichlawoffice.com
                        dcraumer@erlichlawoffice.com
                        kherrmann@erlichlawoffice.com

**CERTIFICATE OF SERVICE**

I hereby certify that on June 7, 2017, a true copy of the foregoing was filed electronically with the Clerk of the Court and served electronically using the CM/ECF upon:

>Douglas E. Bywater (VSB No. 9137)
>James R. Tate (VSB No. 6241)
>Paul Mickelsen (VSB No. 71274)
>Travis D. Tull (VSB No. 47486)
>Tate Bywater Fuller Mickelsen & Tull, PLC
>2740 Chain Bridge Road
>Vienna, VA 22181
>debywater@tatebywater.com
>jtate@tatebywater.com
>pmickelsen@tatebywater.com
>ttull@tatebywater.com
>
>*Counsel for Defendant Alice Guan*
>
>James B. Kinsel (VSB No. 44247)
>Rebecca Bricken Segal (VSB No. 73403)
>PROTORAE LAW, PLLC
>1921 Gallows Road, Suite 950
>Tysons, VA, 22182
>jkinsel@protoraelaw.com
>rsegal@protoraelaw.com
>
>*Counsel for Defendant Advanced Systems Technology & Management, Inc.*
>
>Mihir V. Elchuri (VSB No. 86582)
>HIRSCHLER FLEISHER,
>A PROFESSIONAL CORPORATION
>8270 Greensboro Drive, Suite 700
>Tysons, VA 22102
>melchuri@hf-law.com
>
>*Counsel for Defendant Qi Tech, LLC*
>
>William B. Cummings, Esq. (VSB No. 6469)
>William B. Cummings, P.C.
>Post Office Box 1177
>Alexandria, VA 22313
>wbcpclaw@aol.com
>
>*Counsel for Bing Ran*

15

/s/
Joshua Erlich, VA Bar No. 81298
Davia Craumer, VA Bar No. 87426
Katherine Herrmann, VA Bar No. 83203
The Erlich Law Office, PLLC
2111 Wilson Blvd.
Suite 700
Arlington, VA  22201
Tel:     (703) 791-9087
Fax:    (703) 351-9292
Email: jerlich@erlichlawoffice.com
          dcraumer@erlichlawoffice.com
          kherrmann@erlichlawoffice.com

*Counsel for Plaintiff Fei Guan*