IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| FEI GUAN, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | Case No. 1:17-cv-00332 (JCC/IDD) |
| v. ) | |
| ) | |
| BING RAN; ALICE GUAN; ADVANCED ) | |
| SYSTEMS TECHNOLOGY AND ) | |
| MANAGEMENT, INC.; AND QI TECH, ) | |
| LLC, ) | |
| ) | |
| *Defendants*. ) | |

**DEFENDANT ADVANCED SYSTEMS TECHNOLOGY AND MANAGEMENT, INC.'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**

Defendant Advanced Systems Technology and Management, Inc. ("AdSTM") respectfully submits this reply in further support of its motion to dismiss the Amended Complaint.

## INTRODUCTION

Nothing in Plaintiff's opposition can cure the Amended Complaint's infirmities pointed out in AdSTM's motion to dismiss. Plaintiff's allegations cannot support a *reasonable* inference that he suffered under a "contemporary manifestation of slavery," which the Trafficking Victims Protection Reauthorization Act[1] was enacted to prevent. Plaintiff gives lip service to the term "involuntary servitude," but cannot disguise the fact that he has not – and cannot – allege facts sufficient to demonstrate AdSTM has ever subjected him to the serious physical or psychological

---

[1] The Trafficking Victims Protection Reauthorization Act ("TVPRA" or the "Act") amended the Trafficking Victims Protection Act ("TVPA"), which was enacted "to combat trafficking in persons, a contemporary manifestation of slavery whose victims are predominantly women and children, to ensure just and effective punishment of traffickers, and to protect their victims." Pub. L. No. 106-386 (2000).

coercion required to state a claim under the Act. Plaintiff's Amended Complaint against AdSTM should be dismissed without leave to amend.

## ARGUMENT

### I. PLAINTIFF FAILS TO ALLEGE A COGNIZABLE TRAFFICKING CASE

Counts I - III of the Amended Complaint are brought under the civil remedy provision of the TVPRA. Each of these Counts fails to state a plausible claim within the letter or the spirit of the Act because it lacks one or more fundamental elements of that claim.

#### A. There Is No Involuntary Servitude Or Coercion

Plaintiff recognizes he must allege some form of coercion rising to the level of involuntary servitude to state a cognizable claim under Counts I, II, and III. Dkt. 53, Opp'n at 7 (describing claims as "involuntary servitude to satisfy a debt" (Count I); benefiting "financially from the involuntary servitude of Plaintiff" (Count II); and trafficking Plaintiff to the United States "to obtain his involuntary labor" (Count III)). But neither the Amended Complaint nor Plaintiff's opposition alleges facts sufficient to support the reasonable inference AdSTM coerced Plaintiff to work for AdSTM against his free will. Plaintiff relies on naked assertions he was prevented from leaving AdSTM's employment by the non-competition agreement and U.S. immigration rules. Dkt. 53, Opp'n at 8-9.[2] Yet neither the immigration rules nor the non-compete agreement prevented Plaintiff from seeking other employment opportunities. Dkt. 49, AdSTM Mem. at 5-7, 9.

Plaintiff's merely hypothetical (and *post hoc*) concern over the non-compete agreement's restrictions cannot demonstrate any actual coercion by AdSTM, let alone the serious physical or

---

[2] Plaintiff also asserts his "particular vulnerabilities" to explain his subjective decision to remain employed at AdSTM. Dkt. 53, Opp'n at 16-18. But these vague and generic "vulnerabilities" are neither supported by facts nor an objectively reasonable basis for coercion. *Id.*

psychological coercion required to state a claim under the human trafficking statute.[3] Dkt. 49, AdSTM Mem. at 8-11. Moreover, Plaintiff mischaracterizes the breadth of that agreement, which does not restrict Plaintiff from working for all companies, but only "any person or entity who paid or engaged [AdSTM] for Services, *and* with whom [Plaintiff] had any dealing while employed by [AdSTM]." Dkt. 33, Am. Compl. ¶ 41; Dkt. 53, Opp'n at 4 (emphasis added). The agreement's provision restricting resume submissions is similarly restricted to prospective employers who are "competing against [AdSTM] for the products and services sold by [AdSTM]." Dkt. 33, Am. Compl. ¶ 42; Dkt. 53, Opp'n at 4.

Plaintiff further argues he could not leave AdSTM because he would have lost his visa status and been required to leave the United States under the immigration rules. But this is legally incorrect. Recipients of an H-1B visa are specifically authorized to accept new employment upon the filing of a new H-1B petition by a prospective employer. Dkt. 49, AdSTM Mem. at 9 and n.8. But even if Plaintiff's employment at AdSTM were terminated, and that termination resulted in the loss of his visa status, adverse but legitimate consequences of the immigration rules do not rise to the level of coercion the Act is intended to prevent. And Plaintiff's opposition makes no attempt to refute this. Where an employee "knows he has a choice between continued service and freedom," there is no violation of the Act even if the employer "has led him to believe that the choice may entail consequences that are exceedingly bad." *Turner v. Unification Church*, 473 F. Supp. 367, 375-76 and n.1 (D.R.I. 1978). Dkt. 49,

---

[3] "[T]he critical inquiry for the purposes of the TVPA is whether a person provides those services free from a defendant's physical or psychological coercion that as a practical matter eliminates the ability to exercise free will or choice." *Muchira v. Al-Rawaf*, No. 1:14-cv-770, 2015 U.S. Dist. LEXIS 49806, at **30-31 (E.D. Va. Apr. 15, 2015), *aff'd*, 850 F.3d 605 (4th Cir. 2017). Plaintiff claims AdSTM incorrectly applies this "physical or psychological coercion" standard because the standard is limited to "forced labor" violations under 18 U.S.C. § 1589. Dkt. 53, Opp'n at 17. Plaintiff is wrong. The district court applied the same test to all claims under the Act. *Id.* at **22-40. Plaintiff's confusion likely arises from the fact that Section 1589 was the only claim challenged on appeal in *Muchira*. 850 F.3d at 616.

AdSTM's Mem. at 9-11. Thus, even if Mr. Ran's and Ms. Guan's knowledge and actions are imputed to AdSTM, (Dkt. 53, Opp'n at 10-14), Counts I, II and III should be dismissed for failure to state a plausible claim of coercion.

### B. AdSTM Did Not Benefit Financially

Count II of the Amended Complaint alleges AdSTM "knowingly benefitted financially from participation in a venture," which violated "the peonage provisions" of the trafficking Act. Dkt. 33, Am. Compl. ¶ 175. But Plaintiff's own allegations concede that Mr. Ran and Ms. Guan personally – not AdSTM – reaped any alleged financial benefits from the PSA. In opposition to both Mr. Ran's and Ms. Guan's motions to dismiss, Plaintiff focuses on his "multiple allegations" regarding Mr. Ran and Ms. Guan in their personal capacity, and the personal financial benefits flowing to them as individuals under the PSA. Dkt. 51, Opp'n to Guan Mot. at 9, 15; Dkt. 54, Opp'n to Ran Mot. at 7-8, 9, 11. Indeed, the Amended Complaint's unjust enrichment claims – which require a benefit conferred – are brought solely against Mr. Ran and Ms. Guan in their personal capacities. AdSTM did not benefit financially from the PSA agreement, a personal divorce settlement to which it was not bound; nor did AdSTM benefit financially from payments it never received. The only "benefit" AdSTM conceivably received from Plaintiff, his employee services, were fully paid for by AdSTM. Dkt. 49, AdSTM Mem. at 3-4, 6. Count II should therefore be dismissed against AdSTM for this additional reason.

### C. There Is No "Debt Servitude"

Counts I and II, both of which are grounded in "peonage" or "debt servitude," must be dismissed for the additional and simple reason that Plaintiff fails to allege, and cannot allege, the existence of a debt. *United States v. Reynolds*, 235 U.S. 133, 144 (1914) (existence of a debt is fundamental to any claim of peonage); *Bailey v. State of Alabama*, 219 U.S. 219, 242-43 (1911) (peonage is a condition of compulsory service where an individual is compelled to work until

such debt is paid off). Dkt. 49, AdSTM Mem. at 12-14. Plaintiff admits that: (1) the PSA did not describe the payments as a loan, Am. Compl. ¶ 126; (2) Mr. Ran never described the payments as a debt, *id.* ¶ 124; (3) Mr. Ran never discussed with Plaintiff any repayment of a debt, *id.* ¶ 125; (4) the document Mr. Ran allegedly mentioned to Plaintiff in 2014 did not mention any debt, *id.* ¶ 127; and (5) Plaintiff never signed any document stating the payments were in payment of a loan, *id.* ¶¶ 128-129. Dkt. 53, Opp'n at 6.

Plaintiff's only argument in response to this fundamental deficiency is his unsupported (and *post hoc*) conclusion that he must have "believed himself to be indebted" to AdSTM. Dkt. 53, Opp'n at 15. This is neither a direct allegation of belief nor enough to state a plausible claim, particularly when this alleged "belief" is belied by Plaintiff's own contrary factual allegations. Thus, the Amended Complaint alleges no facts to support an inference that Plaintiff was compelled to work until some debt was paid off. Without such indebtedness, Counts I and II must be dismissed for failure to state a claim.

## II.   NO CASE OR CONTROVERSY EXISTS FOR COUNT V

Plaintiff asks the Court to review the non-compete agreement, and declare it void and unenforceable. Yet AdSTM has never sought to enforce this non-compete agreement against Plaintiff. Accordingly, as demonstrated in AdSTM's opening memorandum of law, Plaintiff cannot sufficiently allege a "case of actual controversy" required for declaratory relief. Dkt. 49, AdSTM Mem. at 15-17. Plaintiff raises no argument to the contrary. Failing to address the settled case law cited by AdSTM, Plaintiff merely asserts his desire to avoid the hypothetical "harm" he would suffer "*should* he indicate his intent to leave his employment at AdSTM." Dkt. 53, Opp'n at 24 (emphasis added). This request not only fails to make any showing of compulsory service from October 2008 to August 2014, which is the only consideration relevant to Plaintiff's lawsuit, but also seeks an improper advisory opinion on a remote and hypothetical

future enforcement of the non-compete. *Pub. Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237, 244 (1952) (unsubstantiated and hypothetical fears of enforcement are insufficient to demonstrate harm required for declaratory judgment). The Court should deny Plaintiff's request and dismiss Count V.

### III.   AMENDMENT IS BOTH PREJUDICIAL AND FUTILE

As Plaintiff notes in his opposition brief, the Court should deny further leave to amend the Amended Complaint if the proposed amendment is prejudicial to AdSTM, *or* if the amendment would be futile. Dkt. 53, Opp'n at 25. Both circumstances are present here. Plaintiff initially filed this lawsuit on March 24, 2017. Dkt. 1. On April 26, AdSTM filed a motion to dismiss the Complaint for failure to state a claim. Dkts. 22-23. Plaintiff responded by filing his Amended Complaint on May 10. Dkt. 33. Now, with this second motion to dismiss, AdSTM demonstrates the Amended Complaint's failure to cure the deficiencies of the initial complaint, and failure to raise any new, valid claims.

Any prospective amendment to the Amended Complaint would undoubtedly be prejudicial to AdSTM. This is no ordinary civil case; Plaintiff alleges serious charges under the federal human trafficking statute, which carries criminal as well as civil penalties. As a result, the potential consequences for AdSTM are substantial, and should not be permitted to linger where Plaintiff has made no showing of his ability to allege any set of facts sufficient to state his trafficking claims.

Moreover, any amendment to the Amended Complaint will prove futile. Plaintiff has already had a chance to bolster his factual allegations against AdSTM, but his failure to do so highlights the insurmountable infirmities of his case. The Court should not allow this exercise in futility to continue, and should refuse to grant Plaintiff leave to amend his complaint. *Estrella v. Wells Fargo Bank, N.A .*, 497 F. App'x 361, 362 (4th Cir. 2012) ("the district court [does] not

abuse its discretion in failing to give the plaintiff[ ] a blank authorization to 'do over' [his] complaint") (quoting *Francis v. Giacomelli*, 588 F.3d 186, 197 (4th Cir.2009)); *Cozzarelli v. Inspire Pharms., Inc.*, 549 F.3d 618, 630–31 (4th Cir. 2008) (finding no abuse of discretion in declining to grant a motion to amend that was raised only in an opposition brief and in objections to the magistrate judge's report).

## CONCLUSION

For the foregoing reasons, AdSTM respectfully requests that the Court dismiss the Amended Complaint against AdSTM because Counts I through III fail to state a claim upon which relief can be granted under the human trafficking statute, Count V's request for declaratory relief fails to allege a justiciable case or controversy, and no amendment can cure the factual and legal deficiencies of these claims.

Dated: June 13, 2017

*/s/ James B. Kinsel*
James B. Kinsel (VSB No. 44247)
Rebecca Bricken Segal (VSB No. 73403)
**PROTORAE LAW, PLLC**
1921 Gallows Road, Suite 950
Tysons, VA 22182
(p) 703-749-8507
(f) 703-942-6758
jkinsel@protoraelaw.com
rsegal@protoraelaw.com

*Counsel for Defendant Advanced Systems Technology and Management, Inc.*

**CERTIFICATE OF SERVICE**

     I hereby certify that on June 13, 2017, I electronically filed a true and correct copy of the foregoing paper with the Clerk of the Court using the CM/ECF system, which will send electronic notification of such filing (NEF) to all registered users of the Court's CM/ECF system who have filed notices of appearance in this matter.

                                       */s/ James B. Kinsel*